SMITH (GOODYEAR DENTAL VULCANITE CO. v.). See Case No. 5,598.

---

## Case No. 13,052.

### SMITH v. GORDON et al.

[2 N. Y. Leg. Obs. 325; 6 Law Rep. 313.]

District Court, D. Maine. Oct. 2, 1843.

BANKRUPTCY—SUIT BY CREDITOR—RIGHT OF ASSIGNEE TO PROSECUTE—LIEN.

1. A creditor of a bankrupt by filing a bill in equity against the bankrupt and his trustee for discovery and relief, before the petition of the debtor to be declared a bankrupt, does not require a lien or right of priority against the assets in the hands of the trustee, that is protected under the last proviso of the second section of the bankrupt law [of 1841 (5 Stat. 440)].
[Distinguished in Trow v. Lovett, 122 Mass. 572.]

2. If the suit is pending at the time of the petition in bankruptcy, the assignee, when appointed, has a right to take upon himself the control and management of the suit, for the benefit of the general creditors.

3. If he elect to prosecute the suit for the benefit of the estate, it must be on condition indemnifying the plaintiff in the suit for all his reasonable expenses incurred in prosecuting it, and in taking himself the responsibility of costs.
[Cited in Norton v. Switzer, 93 U. S. 366.]

4. If he elect not to take the suit into his own hands and allow the plaintiff in equity to proceed to a final decree, such decree will give the plaintiff a lien or right of priority against the property that is within the saving of the proviso.

5. Though all the property and rights of property of the bankrupt, are by operation of law transferred to and vested in the assignee by virtue of the decree of bankruptcy, the assignee is not bound in all cases to take possession of every part.

[Cited in Re Ten Eyck, Case No. 13,829; Glenny v. Langdon, 98 U. S. 30.]

[Cited in Berry v. Gillis, 17 N. H. 15.]

6. If any of the property or any right of property would be rather a burden than a benefit to the estate, the assignee will not ordinarily be bound to take possession of it.

[Cited in Glenny v. Langdon, 98 U. S. 30; Garrett v. Sayles, 1 Fed. 377.]

7. If he elect not to take, the possessory right remains in the bankrupt, and is good against all the world but his assignee.

[Cited in Amory v. Lawrence, Case No. 336.]

8. The assignee's right of election must be exercised within a reasonable time. If he lie by for an unreasonable time and allow third persons in the prosecution of their legal rights to acquire an interest or lien on the property, he will be held by such delay to have made his election not to take.

[Cited in Re McKinney, 15 Fed. 538; Taylor v. Irwin, 20 Fed. 620.]

In bankruptcy. This case was heard on a motion to dissolve an injunction issued on the petition of Smith, the assignee of [A. D.] Lowell, to restrain the defendant from carrying into execution a decree in equity of the state court in his favor, against Lowell and his trustee, Tukey. The bill was filed by Gordon in December, 1839, charging that Lowell, having in 1836, failed in trade and stopped payment, purchased a valuable farm in China, and paid for it with his own money. and caused the same to be conveyed to Tukey for the purpose of keeping it from his creditors, who held it in secret trust for the benefit of Lowell, the bankrupt. The cause proceeded, and was brought to a hearing in June, 1841. but owing to causes which it is not necessary here to state, the decree was not made until June, 1843. While the bill was pending, Lowell petitioned for the benefit of the bankrupt law, and was by a decree of the court duly declared a bankrupt, March 2, 1842, but no certificate of discharge has yet been granted. After the decree of the court on the bill in equity in favor of Gordon, on the petition of the assignee claiming the benefit of the decree as assets for the general creditors, an injunction was granted restraining the plaintiff in equity from carrying the decree into execution, and the question now was on dissolving the injunction.

Mr. Rand, for assignee.
F. Allen, for Gordon.

WARE, District Judge. It is contended on behalf of the defendants that they acquired a lien against the property in question, by the filing of their bill, that is within the saving of the last proviso of the second section of the bankrupt act; and the case Ex parte General Assignee [Case No. 5,305], is relied upon as a conclusive authority in their favor. If that case, decided under another jurisdiction, is applicable to the jurisprudence of this state, it must be admitted that the authority is directly in point. That case was decided in the Northern district of New York, and was, what in that state is called a creditors' bill; that is, a bill by a judgment creditor for the purpose of discovering and reaching property, which cannot be taken on an execution at common law. "It is," says Judge Conkling, "a highly stringent remedy in favor of judgment creditors given (or recognized) and regulated by statute," and by the construction of the statute, or by usage in that state, is held to give to the creditor a lien, a priority or privilege against the assets discovered, to have them appropriated to the payment of his debt, in preference to the other creditors. It is to be observed that the decision in this case is professedly placed on the statute and the local usage of that state, and not on the general principles of equity jurisprudence. Eager v. Price, 2 Paige, 333; Corning v. White, Id. 567. It does not, therefore, necessarily follow that a lien will be gained by the mere filing of such bill in this state, where no such statute exists and no such local usage prevails, modifying or extending the general remedies in equity. The clause of the bankrupt act saves rights and liens, which are valid by the laws of the states respectively and these liens may be various in the different states. The bankrupt act adopts the laws of the states respectively, and saves the liens in each state, which are valid by its own laws.

Whether the filing of a bill in equity by a judgment creditor, for the purpose of reaching property, which the debtor had conveyed in fraud of creditors, will give the plaintiff a lien or right of prior payment out of the property discovered over the other creditors, has never yet been decided in this state. The case of M'Dermutt v. Strong, 4 Johns. Ch. 687, in some of its features bears a strong analogy to the present case. That was a controversy between the assignees of an insolvent debtor and a judgment creditor for the possession of equitable property, which could not be reached by an execution at common law. The defendants claimed to hold the property as assignees of an insolvent debtor for the benefit of his general creditors, and the plaintiffs claim it as judgment and execution creditors, entitled to a preference over the general creditors. The court decided in favor of the claims of the plaintiffs. And the reasoning of the court proceeds on the general principles of equity, and not on the local statute or any peculiar usage of local jurisprudence. Their preference, however, was placed not on the ground that they had filed a bill in equity for the purpose of reaching their property and having it ap-

plied to the satisfaction of their debt, but that they had acquired by their judgment and execution a legal preference and lien on the property. It was the judgment, and not the filing of the bill in equity, that was held to give them the preference. The decision, if I rightly understand it, stands on the general rule of equity in the administration of assets, that a creditor, who by his diligence has obtained a judgment, is entitled in the administration of the assets in a court of equity, against the heir of an executor, to a preference over the general creditors. Thompson v. Brown, 4 Johns. Ch. 643. Under the bankrupt law a judgment creditor has no such preference over the other creditors, but must come in under the bankruptcy, and share equally with them. If indeed the judgment creditor had attached this property to his suit at law, and thus acquired an inchoate lien, that might have been so perfected by a judgment as to bring it within the saving proviso of the act; but in the case of this creditor there was no attachment, and by the law of this state a naked judgment without an attachment gives no lien on the lands of the debtor.

The creditor's lien, therefore, if he has one, stands on his bill in equity, and the proceedings under it. The special object of the suit was to reach property particularly described in the bill and alleged to have been fraudulently placed by Lowell in the hands of Tukey for the purpose of keeping it from his creditors, under a secret trust for Lowell, the bankrupt. It is supposed that a bill of this nature is a sort of proceeding in rem, and gives to the creditor in equity a preference or right of prior payment out of the property over other creditors. But if the institution of a suit in equity gives to the plaintiff a privilege or priority. it is a privilege or lien analogous to that of an attachment, and in this circuit it has been decided upon grounds that I believe are satisfactory to the profession, that the lien created by an attachment is not such a lien as is within the proviso until it is perfected by a judgment. Ex parte Foster [Case No. 4,960]. Allowing, then, for the filing the bill all the effect that is contended for, by this analogy it will not create such a lien as is within the proviso until it is confirmed by a decree. And as the lien was but inchoate and imperfect when the decree of bankruptcy passed. the right of the bankrupt to the property, whatever it was, passed to the assignee. And this conclusion is in conformity with the principles which govern in equity, in the administration of assets. A creditor may file a bill against the personal representative or the heir of a deceased debtor, for the discovery of assets and the payment of his debt; and on such a bill the court may make a decree in his favor. 1 Story. Eq. Jur. § 546. And as a decree is in equity. although it is not regarded at law, of equal dignity with a judgment. the decree will give the same priority or preference in the administration of assets as a judgment; that is, it will give to the creditor a priority or preference over the other creditors. Though it seems that the court may on such a bill enter a more general decree for the benefit of all their creditors, such as is entered on what in equity is properly called a creditors' bill, that is, a bill which a creditor brings for himself and for all the other creditors who choose to come in and prove their debts under the decree (1 Story, Eq. Jur. § 546, note 2, § 547; Thompson v. Brown, 4 Johns. Ch. 620, 631), if in point of fact such is not the decree most usually made (4 Johns. Ch. 631, 638; Martin v. Martin, 1 Ves. Sr. 211; Douglas v. Clay [1 Dickens, 393], cited in 10 Ves. 40; Brooks v. Reynolds, 1 Brown, 183). Such a general decree is considered as a judgment for all the creditors, and binds the assets so as to exclude all preferences after the decree. But a creditor neither at law nor in equity gains any preference by a race of diligence before judgment or a decree. It appears to me therefore that Gordon gained no preference or exclusive right to have his debt satisfied out of this property by the institution of his suit alone, on the general principles of equity, however it may be under the statute of New York; but when that suit was carried to a final decree. the decree did give him such preference. The true course, it seems to me, would have been for the assignee, after the decree of bankruptcy, to have come in and taken the management of the suit into his own hands, for the benefit of all the creditors.

But there is another ground upon which I think Gordon has a right to hold his property, or so much of it as will satisfy this debt against the assignee. By the bankrupt act, all the property and rights of property of the bankrupt, by force of the decree of bankruptcy, pass to the assignee by operation of law, and become vested in him as soon as it is appointed. But though the legal title passes, he is not bound to take possession of all. It is perfectly well settled with respect to leasehold estates, under the English bankrupt laws, that the assignee is not bound to take the lease, and charge the estate with the payment of rent. Copeland v. Stephens, 1 Barn. & Ald. 593. The rent may be greater than the value of the lease, and thus the estate may be burthened instead of being benefited by taking the lease, and in such a case the damnosa hereditas may be abandoned by the assignee. I have had occasion to consider this question in another case, and I came to the conclusion that this doctrine equally holds under our bankrupt law. Ex parte Whitman, Dec., 1842.[1] And I take the principle to be a general one, that the assignee is not at least ordinarily bound to take into his possession property, which will be a burthen instead of a benefit to the estate. If the assignee elects not to take, the property remains in the bankrupt, and no one has a right to dispute his possession. His posses-

---

[1] [Unreported.]

sory title is good against all the world but his assignee. Webb v. Fox, 7 Term R. 391; Fowler v. Down, 1 Bos. & P. 44. Thus in this case if the assignee elected not to take the right of the bankrupt and charge the estate with the costs of a suit in equity, the issue of which was uncertain, the right, whatever it was, remained in the bankrupt, and might be pursued by any creditor who had not proved under the bankruptcy. But the assignee now elects to claim the property. Admitting that the claim might have been maintained, if it had been asserted while the bill in equity was pending, and I am of the opinion, on the whole, that it might, and conceding further that a final decree of the court is not a bar to the claim which I think it is; still my opinion is, that for another reason it is too late for the assignee successfully to make the claim now. If the assignee may elect to take or not to take any part of the bankrupt's property, some period of time must be limited within which the election is to be made. If he elects not to take, the property remains in the bankrupt, for his possession gives him a good title against every person except the assignee, and the assignee cannot be allowed to hold the title in this kind of abeyance for an indefinite or unlimited period. If with the knowledge of the bankrupt's title, or with the means of knowledge, he stands by without asserting his claim for a length of time, and allows third persons in the prosecution of their legal rights to acquire an interest in the property, it appears to me that he then comes too late to assert his claim; that the time for his election is then passed. In this case, the property or right of property, had been in litigation for more than two years, when Lowell was declared a bankrupt. Large expenses had been incurred in the prosecution of the suit, and the issue was still undecided and doubtful. Admitting that the assignee had then a right to assert and maintain his claim, he must be allowed a reasonable time to investigate the title, and determine whether it would be for the interest of the creditors to assert his claim or not. If he had elected to assert his rights, it must have been on the condition of reimbursing to the plaintiffs in equity the reasonable expenses they had incurred in the prosecution of the suit, and of becoming responsible for costs. If the assignee had no assets in his hands to meet these expenses, and such was the fact in this case, it would be unreasonable to require him to assert a doubtful claim for the sole benefit of the creditors at the hazard of being personally liable for the expenses and costs. But the general creditors might have come forward and required him to assert his rights by giving him an indemnity. But it would be highly inequitable to allow either the creditors or the assignee to stand by and await the issue of a doubtful suit, and where it is decided in favor of the plaintiff, to come forward and wrest from him the fruits of an expensive and hazardous litigation. On this ground, I think it is too late for the assignee in behalf of the general creditors, now to elect, to assert his title. The injunction must therefore be dissolved.