161 U.S. 513 (1896)
DUSHANE
v.
BEALL.
No. 184.
Supreme Court of United States.
Submitted March 2, 1896.
Decided March 16, 1896.
ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.
*515 Mr. Edward Campbell for plaintiff in error.
Mr. Leoni Melick for defendant in error.
MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.
We concur with the Supreme Court of Pennsylvania that the limitation of § 5057 of the Revised Statutes did not apply. That limitation is applicable only to suits growing out of disputes in respect of property and of rights of property of the bankrupt which came to the hands of the assignee, to which adverse claims existed while in the hands of the bankrupt and before assignment. In re Conant, 5 Blatchford, 54; Clark v. Clark, 17 How. 315, 321; Phelps v. McDonald, 99 U.S. 298, 306; French v. Merrill, 132 Mass. 525.
It is well settled that assignees in bankruptcy are not bound to accept property which, in their judgment, is of an onerous and unprofitable nature, and would burden instead of benefiting the estate, and can elect whether they will accept or not after due consideration and within a reasonable time, while, if their judgment is unwisely exercised, the bankruptcy court is open to compel a different course. Sparhawk v. Yerkes, 142 U.S. 1, 13; Glenny v. Langdon, 98 U.S. 20; American File Co. v. Garrett, 110 U.S. 288; Smith v. Gordon, 6 Law Rep., 313; Amory v. Lawrence, 3 Clifford, 523; Ex parte Houghton, 1 Lowell, 554; Nash v. Simpson, 78 Maine, 142; Streeter v. Sumner, 31 N.H. 542. The same principle is applicable also *516 to receivers and official liquidators. Quincy &c. Railroad v. Humphreys, 145 U.S. 82; St. Joseph &c. Railroad v. Humphreys, 145 U.S. 105; Sunflower Oil Co. v. Wilson, 142 U.S. 313; United States Trust Co. v. Wabash &c. Railway, 150 U.S. 287; In re Oak Pits Colliery Co., 21 Ch. Div. 322, 330. And see Bourdillon v. Dalton, 1 Esp. 233; S.C. Peake's N.P. 312; Turner v. Richardson, 7 East, 336; Domat, vol. 2, part 2, Book I, Title I, sec. v.
If with knowledge of the facts, or being so situated as to be chargeable with such knowledge, an assignee, by definite declaration or distinct action, or forbearance to act, indicates, in view of the particular circumstances, his choice not to take certain property, or if, in the language of Ware, J., in Smith v. Gordon, he, with such knowledge, "stands by without asserting his claim for a length of time, and allows third persons in the prosecution of their legal rights to acquire an interest in the property," then he may be held to have waived the assertion of his claim thereto.
In Sparhawk v. Yerkes we held that as the conduct of the assignees was such as to show that they did not intend to take possession of the assets in controversy; as they avoided assuming any liability in respect thereof; and as they allowed the bankrupt after his discharge by the expenditure of labor and money to save the assets and render them valuable, they could not be permitted to assert title against him. That was a suit directly against the bankrupt, and this is in effect the same, for Beall does not appear to occupy any better position than Tinstman himself. The judgment of the Supreme Court of Pennsylvania proceeded upon the ground that the assignee delayed too long in the assertion of his claim; that the litigation against the railroad company was protracted, uncertain, and expensive; and that as the assignee did not appear to have intervened in the matter until, as is stated, December 11, 1890, although the litigation began in the summer of 1882, he must be held to have elected to abandon the claim, and could not come in at so late a day and share in the fruits of litigation carried on by others; and on that view of the facts this conclusion would seem to be correct if the record showed on *517 the part of Tinstman's assignee knowledge of the facts or wilful blindness in relation to them.
The Supreme Court manifestly referred to the intervention, in this proceeding, of Dushane, as assignee, which was, according to the case stated, September 11, 1890; but McCullough had intervened as assignee August 10, 1888, and he having died August 31, 1889, the cause was continued for the appointment and appearance of another assignee.
It is said by counsel for the assignee that the original litigation was commenced April 29, 1878, by a bill in equity, filed for the benefit of all the owners of the telegraph line, which it was decided January 9, 1882, would not lie; that thereupon the action at law, which resulted in judgment, was brought July 10, 1882, in the name of Shaw alone, the contract being under seal, but for the benefit of his assigns as well, who were very numerous; that afterwards some, but not all, of the "use plaintiffs" were added to the record; and that Tinstman's assignee just as much participated in the litigation, from April, 1878, to its end in 1888, as any of the others, whether named as plaintiffs or not. The difficulty with this is that very little, if any, of the matter stated can be deduced from the record, which fails to disclose that the assignee was represented in the litigation against the railroad company, or asserted his claim to his share of the fruits thereof, whether as a party of record under Shaw or otherwise prior to his intervention in this action, August 10, 1888.
The case stated does show that Tinstman was made one of the "use plaintiffs" in Shaw's action, October 2, 1885, but there is no explanation of how that entry came to be made, and nothing to indicate notice thereof to the assignee, or to charge him with notice assuming that he was ignorant of the claim.
On the other hand, the bankruptcy proceeding was involuntary, and it appears that the schedule of assets (the term schedule being used in the case stated as the equivalent of the inventory) was made by the assignee, the law providing that the order of adjudication should require the bankrupt to deliver a schedule of creditors and an inventory and valuation *518 of his estate, and if the bankrupt were absent or could not be found, such schedule and inventory should "be prepared by the messenger and the assignee from the best information they can obtain." Rev. Stat. §§ 5030, 5031. And this inventory, thus prepared by the assignee, the record affirmatively shows, did not embrace the bankrupt's interest in the telegraph line, as we must presume it would, if the assignee had had, or been able to obtain, information in respect thereof. Nor can we find elsewhere in the record any evidence that the assignee knew or was informed of Tinstman's interest prior to August 10, 1888. Counsel for the assignee argues that the fact is that Tinstman's interest was the ownership of certain shares of stock in the telegraph company which were included in the inventory and delivered to the assignee, but the exact contrary appears from the case stated. Nor does the fact appear, which he likewise insists upon, that the assignee not only did not abandon, but actively asserted, his claim.
The question whether the assignee in bankruptcy was entitled to this claim was clearly a Federal question. Williams v. Heard, 140 U.S. 529. And if all the facts stated in the record before us do not, as matter of law, warrant the conclusion at which the highest court of the State arrived upon this question, it is the duty of this court so to declare, and to render judgment accordingly.
We must take the record as we find it, and are constrained to the conclusion that the assignee should not have been held to have exercised the right of choice between prosecuting the claim and abandoning it, in the absence of any evidence whatever to justify the conclusion that he had knowledge, or sufficient means of knowledge, of its existence prior to August 10, 1888; and that therefore there was error in the judgment.
Judgment reversed, and the cause remanded, that the judgment of the Court of Common Pleas may be reversed, and further proceedings had not inconsistent with this opinion.