Provident Life & Trust Company of Philadelphia v. Fidelity Insurance, Trust & Safe Deposit Company, Appellant.

*Insurance—Life insurance—Assignment of policy—Assignment for creditors—Damnosa haereditas.*

Where at the time of an assignment for creditors there is in existence an endowment policy on the life of the assignor payable to him eight years thereafter if he should reach the age of sixty years, or if he should die in the mean time to his wife and children, and the assignee does not include the policy in his inventory, or in his account subsequently filed, and never pays any premiums out of the assigned estate to keep it alive, but subsequently the assignor in pursuance of an antenuptial agreement with his second wife, who had no knowledge of the assignment for creditors, assigns his interest in the policy to her, and thereafter makes another assignment of his interest in the policy to the assignee individually and another person to secure debts of their own, and the latter parties pay the premiums and

keep the policy alive, an assignee for creditors substituted in the place of the original assignee is not entitled to the proceeds of the policy, because (1) the original assignee had in fact abandoned it; (2) because such assignee had a right to abandon it, and (3) because the right of the second wife had intervened.

In such a case the administrator of the second wife who had died before the policy matured, is entitled to the fund, and if it passes under the intestate laws to her husband as her sole representative it does so subject to his assignments after her death, and the attachments issued against him, as if he had never owned the policy, and his wife had acquired the title to it through a stranger. The ultimate distribution of the proceeds of the policy belongs to the orphans' court when the wife's administrator shall have filed an account.

Argued March 27, 1902. Appeal, No. 69, Jan. T., 1902, by defendant, from decree of C. P. No. 4, Phila. Co., Sept. T., 1900, No. 346, on bill in equity in case of Provident Life & Trust Company of Philadelphia v. Fidelity Insurance Trust & Safe Deposit Company, substituted for Swithin C. Shortlidge, as Administrator of Marie Dixon Jones Shortlidge, Deceased, et al. Before McCOLLUM, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Bill of interpleader. Before AUDENREID, J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was in awarding the fund to Garrett E. Smedley, substituted assignee.

*R. C. Dale*, with him *E. Spencer Miller*, for appellant.— Howard had a right as assignee to discard effects included in the general words of the assignment, which had no salable value and would be an expense or burden without substantial proceeds within a reasonable term of liquidation : Hanson v. Stevenson, 1 Barn. & Ald. 307 ; Copeland v. Stephens, 1 Barn. & Ald. 593 ; In re Learmouth, 14 Weekly Rep. (Eng.) 628; Smith v. Gordon, 2 N. Y. Leg. Obs. 325 ; In re McKinney, 15 Fed. Repr. 535 ; In re Newland, 7 N. B. R. 477 ; Journeay v. Brackley, 1 Hilt. 447 ; Pratt v. Levan, 1 Miles, 358 ; Reynolds v. Cridge, 131 Pa. 189.

The assignee did in fact indicate an abandonment of the endowment obligation: In re Learmouth, 14 Weekly Rep. (Eng.) 628 ; Smith v. Gordon, 2 N. Y. Leg. Obs. 325 ; In re McKinney,

15 Fed. Repr. 535; Lewis v. Burr, 8 Bosw. 140; Hurlbut v. Hurlbut, 49 Hun, 189; Reynolds v. Cridge, 131 Pa. 189.

*Charles Lex Smyth* and *N. Dubois Miller,* with them *Charles A. Chase* and *Biddle & Ward,* for appellee.—There is no presumption of law, and it is not ascertained as a fact that Howard, the assignee, had abandoned this asset of the assigned estate: Robbins's App., 199 Pa. 500; Meeker v. Felts, 49 N. J. Eq. 502; Burrill on Assignments, (4th ed.), sec. 100; Trickett on Assignments, sec. 12; Shenk v. Franke, 10 Lancaster Bar, 146; Partridge's Est., 19 W. N. C. 62; Rhode Island Nat. Bank, v. Chase, 16 R. I. 37; In re Steele, 98 Fed. Repr. 78; Lange's Case, 91 Fed. 361; Slingluff's Case, 5 Am. Bankruptcy Rep. 76.

The right of property in all the assets possessed by the assignor at the time of making a general assignment vests in such persons as are creditors at the time of the assignment: Marks's App., 85 Pa. 231; Jordan's App., 107 Pa. 75; Golden's App., 110 Pa. 581.

Shortlidge being the sole distributee of his wife's estate can make no claim to this fund in her right: Dearle v. Hall, 3 Russ. 1; Weaver v. Roth, 105 Pa. 413; Clark v. Clark, 180 Pa. 186; Heath v. Page, 63 Pa. 108; Kunkle's Appeal, 107 Pa. 368; Irvin v. Irvin, 169 Pa. 529; Gill v. Henry, 95 Pa. 388; McLean v. Wade, 53 Pa. 146; Roberts v. Messinger, 134 Pa. 298; Walworth v. Abel, 52 Pa. 372.

It is very certain that Miss Jones never had possession of this policy either before or after she became Mrs. Shortlidge, so that she had at least, constructive notice affecting her title, and in any case notice to the insurance company was not necessary: Holmes v. Union Traction Co., 199 Pa. 229; Fortunato v. Patten, 147 N. Y. 277; Kennedy v. Parke, 17 N. J. Eq. 415; Myerstown Bank v. Roessler, 186 Pa. 431; Wetter v. Kiley, 95 Pa. 461; Faull v. Tinsman, 36 Pa. 108; Putnam v. Story, 132 Mass. 205; Spencer v. Clarke, L. R. 9 Ch. Div. 137; Falk v. Janes, 49 N. J. Eq. 484; Trough's Est., 75 Pa. 115; Malone's Est., 8 W. N. C. 179.

*Albert Dutton MacDade,* for Swithin C. Shortlidge, Jr., et al.

*Leonard E. Wales,* for Evan G. Shortlidge.

OPINION BY MR. JUSTICE BROWN, May 19, 1902:

On September 17, 1879, the Provident Life and Trust Company of Philadelphia issued its policy of insurance to Swithin C. Shortlidge, by the terms of which it promised to pay him the sum of $10,000 on September 17, 1900, when he would be sixty years of age; but, if he should die before that time, the promise of the company was to pay the said sum to his wife, Jennie J. Shortlidge, and such children as should survive him, in equal shares to each; and, if none should survive, then to his executors, administrators or assigns, within sixty days after due notice and satisfactory proof of his death, during the continuance of the policy. While it was in force, on June 4, 1892, Shortlidge executed a deed of assignment for the benefit of creditors to Henry C. Howard. The policy was not treated by the assignee as an asset of the assigned estate; he did not include it in the inventory filed in the office of the prothonotary of Delaware county, nor is there any reference to it in his account, filed December 2, 1893, and subsequently confirmed absolutely by the court, as a matter of course, in the absence of any exceptions to it. No premiums were paid by the assignee; through assistance furnished by others it was kept alive for several years. The assignee subsequently became insane; on March 19, 1901, Garrett E. Smedley, the appellee, was appointed trustee to succeed him, and is now claiming the proceeds of the policy, which the Provident Life and Trust Company has always been ready to pay to whoever may be judicially determined to be entitled to receive the money. The substituted assignee has no rights which his predecessor did not possess when he was removed, and the claim of the assigned estate must be considered as presented by the original assignee. Jennie J. Shortlidge, who was the wife of Swithin C. Shortlidge when the policy was issued, died February 4, 1890. On November 15, 1893, he married Marie Dixon Jones, to whom, on October 18, 1893, as found by the court below, in consideration of her promise to become his wife, he transferred his interest in the policy. The finding is, "In consideration of Miss Jones's consent under the circumstances to become his wife, it had been agreed between them that he should transfer to her his right under the policy of the Provident Life & Trust Co., to receive the $10,000 payable to him should he attain the

age of sixty years. On October 18, 1893, accordingly Mr. Shortlidge, by writing under seal, assigned to Miss Jones all his 'right, title and interest in and to' the policy above mentioned and ' all advantage to be derived therefrom' in case said policy should become payable as a matured endowment. It is not shown that Miss Jones knew of the assignment which Mr. Shortlidge had made to Howard for the benefit of his creditors, or of his insolvency." Marie D. J. Shortlidge died intestate December 31, 1893, within two months of her marriage to Shortlidge. The premium due on the policy on March 17, 1895, was not paid, and, on September 15, 1895, by its express terms, it lapsed. A paid up policy was issued in lieu of it, as appears from the following finding of the court: "It seems, however, to have been the usage of the insurance company, if not according to the strict letter of the policy, that this policy, in spite of its lapsing, entitled its holder to a certain amount of paid-up insurance upon its production and surrender. On May 14, 1897, application for the issuance of a paid-up policy in place of that which had lapsed was made by Henry C. Howard, acting as attorney in fact for Swithin C. Shortlidge, and as guardian, by appointment of the orphans' court of Delaware county, of Shortlidge's five minor children. Upon an adjustment of the unpaid premium and interest account, the company on May 18, 1897, in consideration of the representations and stipulations made in the application for its policy No. 14,680, issued a paid-up policy No. 70,934, binding itself to pay the sum of $6,865 to Swithin C. Shortlidge (subject to the assignment of the original policy to Marie D. Jones, and also subject to the assignment of the original policy to Evan G. Shortlidge and Henry C. Howard and others) on the 17th day of ninth month, 1900, provided said Shortlidge should then be living; but in the event of his decease before arriving at the age of sixty years on that day to such wife (Jennie J. Shortlidge) and children as should survive him in equal shares each." On September 17, 1900, when the endowment obligation had matured, letters of administration were granted to Swithin C. Shortlidge on the estate of his wife, Marie D. J. Shortlidge. On October 9, 1900, as administrator, he brought suit against the Provident Life & Trust Company to recover the amount due on the policy. Since the decree of the court below, the Fidelity In-

surance, Trust & Safe Deposit Company, the appellant, has been appointed administrator in his place. Among the findings of fact by the court below, it appears that Shortlidge made other assignments of his interest in this policy after his assignment to Marie Dixon Jones, having made one on October 29, 1894, to Evan G. Shortlidge and Henry C. Howard, his assignee for the benefit of creditors under the deed executed on June 4. 1894, as collateral security for his indebtedness to them, as well as for any moneys which they had advanced, or might thereafter advance, in payment of premiums on this policy, or any other policy that had been issued in favor of himself or his children ; and several attachments in execution were issued on judgments against him, which were served upon the Provident Life & Trust Company as garnishee. To be relieved from the consequences of a mispayment to any one of the claimants to the fund in its hands, the said company filed the bill in the court below for the ascertainment of the person or persons entitled to receive the money in its hands, due on the policy it had issued. But, numerous as the claimants to the fund are, we are to determine simply whether it is to be paid to Garrett E. Smedley, substituted in place of Henry C. Howard, as assignee, apparently for the purpose of trying to collect this money, or to the Fidelity Insurance, Trust & Safe Deposit Company, administrator of Marie Dixon Jones Shortlidge, deceased. The parties ultimately to receive the money must be determined by the court having jurisdiction of the account of the substituted trustee or administrator, to whom the fund may be awarded in the first instance. That the appellee is not entitled to the proceeds of the policy, the appellant contends, first, that Howard, the original assignee, had a right to discard the policy as one of the effects included in the general words of the deed of assignment, as it had no salable value and would have been an expense or burden without substantial proceeds within a reasonable term of liquidation ; secondly, that there was cause for abandoning it as an unsalable asset of the assigned estate ; and, thirdly, that it was actually abandoned. Reversing the order of these propositions, we will consider the last first.

That Howard, the original assignee, intended to discard the policy as an asset of the assigned estate is indicated by his conduct at the very inception of the trust. As was his duty, he

filed an appraisement of the assets of the assigned estate; but, as already stated, he omitted the policy from it and made no mention of the same in his account, subsequently filed. That he knew this policy had been issued to the assignor appears from the fact that, in October, 1894, he took an assignment of it to himself in conjunction with Evan G. Shortlidge, a brother of Swithin C., as collateral security for the latter's indebtedness to them, as well as to secure them for moneys to be advanced to or for him. Though he had lodged no notice with the company that he claimed the policy as an asset of the assigned estate, as soon as the assignment was made to and received by him as an individual, he gave notice to the company of the assignment, as required by the terms of the policy. He paid no premium on behalf of the assigned estate; but, after the assignment to himself and the brother of Shortlidge, they together paid the premiums, to keep the policy alive, presumably for their own individual protection. At any rate, not a dollar was paid for or on account of the assigned estate to keep the policy in force, and no claim can be made by the appellee on that account. Not until after Shortlidge had attained sixty years or age, on September 17, 1900, and the amount of the paid-up policy was due, is there any evidence that the assignee, or any creditor of the asssigned estate, ever regarded the policy as one of its assets; and, though not found as a fact by the learned court below, in determining the question now before us, we regard the abandonment of the policy by the assignee as conclusively established. The question is not what he ought to have done, but what he did. If he abandoned what his successor in the trust now claims as an asset of the assigned estate, and he ought not to have abandoned it, the creditors for whom he was trustee may call him to account; but the rights of others that have accrued in the mean time, by reason of his abandonment of the policy, cannot be affected by the claim made at this late day to its proceeds. When it could have been treated as an asset, it was discarded and abandoned by the assigned estate of Shortlidge, through whose representative it is now claimed. Others kept it alive until, at last, the prolonged life of the insured made it money, and it dawned upon the appellee, or those for whom he would now claim it, that it is an asset of the assigned estate. But, if it was abandoned, discarded and disre-

garded as a thing of no value to that estate, and became the property of another in the mean time, the zeal of the present trustee is too late. In saying that, if the original assignee improperly abandoned the policy, the creditors of the assigned estate may call him to account, we are not to be understood as saying that the abandonment was improper; for we are of one mind that it was proper, for reasons about to be given in considering appellant's second proposition.

At the date of the assignment to Howard the policy had eight years and three months to run. Whether it could ever become a realizable asset of the assigned estate depended entirely upon whether Shortlidge would live until September 17, 1900, during which period the assignee would not only have been compelled to delay the settlement of the estate, but to pay a number of premiums; and, if at any time during that period Shortlidge should have died, the proceeds of the policy would have gone to others. Surely no assignee would be expected to keep up such a policy, and, if he were to do so out of the funds of the assigned estate, and the benefits should flow to others by reason of the death of the insured before the endowment paying period had arrived, he might be properly surchargeable for all premiums paid by him as trustee. Nor was the assignee required to offer this policy for sale; for, at the date of the assignment, it had no salable value. The interest of Shortlidge in it was simply contingent upon his living to be sixty years of age; and no transfer by him or his assignee could have passed the interest of his children in it, without which it is not reasonable to suppose any one would have purchased it. J. Thomas Moore, assistant to the manager of the insurance department of the company, testified: " Q. Was there any market or any possibility of disposing for any payment of the endowment obligation of such a policy in 1892 with eight years still to run, with premiums covering the insurance obligation as well as the endowment obligation to pay, but with the insurance obligation outstanding in another owner? A. Not with the company ; no, sir. Q. Was there a possibility of realizing upon such an obligation with any party, so far. as your experience in the insurance business enables you to say ? A. I would say no, sir." The testimony of David G. Alsop, actuary of the company, was as follows: " Q. Will

you tell the court whether that endowment obligation had any realizable value in June, 1892, a little more than eight years before the date of maturity ? A. It had not. That is to say, we would not have paid. Q. I would like you to answer this question further, whether that obligation, separate from the insurance obligation, could have been realized upon in any way by anyone empowered to transfer it alone ? A. No, sir." It would have been a vain and useless thing for the assignee to have tried to sell it, and, for his failure to do so, no responsibility rests upon him.

As there was good cause why the assignee should have disregarded the policy as an asset of the estate assigned to him for the benefit of the assignor's creditors, his right to absolutely abandon it, never to be reclaimed either by him or his successor for those for whom the legal title of the assignor's estate was held, is founded upon reason, and, therefore, settled by authorities that cannot be questioned. We have referred to the causes which justified the abandonment of this policy; and they furnish the reason of the law that it was the right of the assignee to abandon what was manifestly a burdensome asset, with no value at the time ; to be preserved only by the expenditure of the funds of the assigned estate ; with no prospect of a return for years, and with the chances, at least even, that, in the end, others would reap the benefit of it.

In Hanson v. Stevenson, 1 Barn. & Ald. 307, Lord ELLEN-BOROUGH said : " The assignees of a bankrupt are not bound to take what Lord KENYON called a damnosa haereditas, viz., property of the bankrupt, which so far from being valuable, would be a charge to the creditors ; but they must make their election promptly, and having once made it, they must abide by that decision." In Copeland v. Stephens, 1 Barn. & Ald. 593, the same judge said : " We are of opinion that the general assignment of a bankrupt's personal estate, under his commission, does not vest a term of years in the assignees, unless they do some act to manifest their assent to the assignment, as it regards the term, and their acceptance of the estate. . . . The assignees of a bankrupt are not bound to accept a term of years, that belonged to the bankrupt, subject to the rent and covenants ; for the object of the statute and of the assignment being the payment of the bankrupt's debts, and the assignees under the com-

mission being trustees for that purpose, the acceptance of a term, which, instead of furnishing the means of such payment, would diminish the fund arising from other sources, cannot be within the scope of their trust or duty." In re Learmouth, 14 Weekly Rep. (Eng.) 628, a bankrupt had kept up the payment of premiums on certain policies of insurance upon his life, which were, before his bankruptcy, subject to pledge for his debts. The assignee refused to pay the premiums on these policies and keep them up, and disclaimed all interest in them. After the death of the insured, the question was raised between the assignee and the bankrupt's representatives as to the ownership of the proceeds, which had been paid into court by the pledgee after he had deducted the amount of his debts. Lord ROMILLY, M. R., ruled that the representatives of the deceased pledgor were entitled to the fund. In the well considered case of Smith, Assignee, v. Gordon, 2 N. Y. Leg. Obs. 325, from which we are justified in quoting at length, it was held : " By the bankrupt act, all the property and rights of property of the bankrupt, by force of the decree of bankruptcy, pass to the assignee by operation of law, and become vested in him as soon as he is appointed. But though the legal title passes, he is not bound to take possession of all. It is perfectly well settled with respect to leasehold estates, under the English bankrupt laws, that the assignee is not bound to take the lease, and charge the estate with the payment of rent: Copeland v. Stephens, 1 Barn. & Ald. 573. The rent may be greater than the value of the lease, and thus the estate may be burdened instead of being benefited by taking the lease, and in such a case the damnosa haereditas may be abandoned by the assignee. . . . I take the principle to be a general one, that the assignee is not at least ordinarily bound to take into his possession property, which will be a burden instead of a benefit to the estate. If the assignee elects not to take, the property remains in the bankrupt, and no one has a right to dispute his possession. His possessory title is good against all the world but his assignee : Webb v. Fox, 7 Term R., 391 ; Towle v. Down, 1 Bos. & Pull. 44. Thus in this case if the assignee elected not to take the right of the bankrupt and charge the estate with the costs of a suit in equity the issue of which was uncertain, the right, whatever it was, remained in the bankrupt, and might be pursued by any cred-

itor who had not proved under the bankruptcy. But the assignee now elects to claim the property. Admitting that the claim might have been maintained, if it had been asserted while the bill in equity was pending, and I am of opinion on the whole that it might, . . . . still my opinion is, that for another reason it is too late for the assignee successfully to make the claim now. If the assignee may elect to take or not to take any part of the bankrupt's property, some period of time must be limited within which the election is to be made. If he elects not to take, the property remains in the bankrupt, for his possession gives him a good title against every person except the assignee, and the assignee cannot be allowed to hold the title in this kind of abeyance for an indefinite or unlimited period. If with the knowledge of the bankrupt's title or with the means of knowledge, he stands by without asserting his claim for a length of time, and allows third persons in the prosecution of their legal rights to acquire an interest in the property, it appears to me that he then comes too late to assert his claim; that the time for his election is then past. In this case, the property or right of property had been in litigation for more than two years, when Lowell was declared a bankrupt. Large expenses had been incurred in the prosecution of the suit, and the issue was still undecided and doubtful. . . . It would be highly inequitable to allow either the creditors or the assignee to stand by and await the issue of a doubtful suit, and where it is decided in favor of the plaintiff, to come forward and wrest from him the fruits of an expensive and hazardous litigation. On this ground I think it is too late for the assignee in behalf of the general creditors now to elect to assert his title." In In re McKinney, 15 Fed. Repr. 535, the creditors of a bankrupt who had insured his life claimed the proceeds on his death. The policy had been specifically mentioned in the schedule of assets; but the assignee had taken no steps to keep it alive by the payment of premiums, or otherwise. The court held: "Beyond this interest in the surrender value I think nothing passed to the assignee in bankruptcy save the naked title to the policy in order to make that interest available. As an executory contract, aside from its surrender value, the policy had no pecuniary value whatever. . . . In such cases the assignee has at least an election to reject the contract, and if, knowing

its terms, he does nothing to avail himself of it, and allows third persons to acquire an interest in it, he must, as against the latter, be deemed to have rejected it, except in so far as the law itself casts it upon him ; which, in this case, it does to the extent of the surrender value only.    In the language of WARE, J., ' It would be highly·inequitable to allow the assignee to stand by and await the issue and then to wrest all the fruits of it' from those who had secured it : Smith v. Gordon, 6 Law Rep. 313, 317, 318 ; 2 N. Y. Leg. Obs. 325, 328 ;·Copeland v. Stephens, 1 Barn. & Ald. 594, 604; Hanson v. Stevenson, 1 Barn. & Ald. 304, 307 ; Lewis v. Burr, 8 Bosw. 140; Journeay v. Brackley, 1 Hill, 447.   The assignee, moreover, could have no right to use the moneys of the estate to pay premiums during the bankrupt's life, and thus keep the estate unsettled for an indefinite period, for the mere purpose of speculating upon the chances of the bankrupt's early death : In re Newland, 7 N. B. R. 477." In Lewis v. Burr, 8 Bosworth, 140, BOSWORTH, C. J., said : " The same considerations of public policy which permit an assignee in bankruptcy, a receiver or executor, to reject a term which would be a charge instead of a benefit to the estate he is appointed to administer, would seem to favor its application to a voluntary assignee for the benefit of creditors." In our own state, the same view was entertained in Pratt v. Levan, 1 Miles, 358 : " It is now clearly settled as law that the assignees of a bankrupt are entitled to elect or refuse  to take a lease according to their estimate of its value, without interfering with their rights to the other property.   If they think it valuable, and calculated to increase the fund, they may, and in conscience they are bound to do the best with it for the benefit of the estate. . . . I can see no reason why these principles should not be equally applicable to the assignees of an insolvent man under a general voluntary assignment for the benefit of creditors, particularly where there is no specification or schedule of property describing the lease."    And, as late as Reynolds v. Cridge, 131 Pa. 189, we held : " That an executor may abandon property pledged, or subject to assessment, if there is no value over the debt or the assessment to be preserved for the estate, was ruled by Chief Justice SHAW in Ripley v. Sampson, 10 Pick. 373." In Hurlbut v. Hurlbut, 49 Hun, 189, the facts were very similar to those now before us.   It was

there said: "To defeat the right of the plaintiff to maintain the action, proof was given under the answer showing that a general assignment was made on September 11, 1884, by a firm, of which the assured was a member. This assignment was not only made of the partnership property, for the benefit of the firm creditors, but, in addition to that, it was declared that the assignors sold, assigned, delivered and conveyed to the assignee, all and singular their real estate and personal property of every kind and nature, held and owned by them respectively, as their separate and individual property. And under this assignment it was urged at the trial that the assured had become divested of his interest in the policy, prior to his assignment in 1887, to the plaintiff, and that she acquired no title whatever under that assignment. But the defendant was in no way connected with this assignment, or with the right or title of the assignee under it. And it did not appear that the policy of life insurance was ever passed over or delivered to the assignee, or in any manner claimed by him, but the probabilities of the case warrant the conclusion that it remained in the possession of the assured himself, and he paid the premiums upon it, which, by its own language, was indispensably necessary to keep the policy alive. In this manner he has from time to time renewed it for his own benefit, subsequent to the time of the execution and delivery of the assignment. If that had not been done by the payment of the annually accruing premium, the policy would have ceased to exist and become null and void. In this manner the assured continued the insurance himself, after the time when the general assignment was executed and delivered, and he had secured to himself its benefit as an insurance upon his life by what had taken place after the general assignment was made, and which, if it had been omitted, would have voided the policy. And that gave him the right, certainly, against the personal representative of his own estate, to assign the insurance to the plaintiff in the action, as he is already shown to have done. And the court, on this account, was right in overruling the objection that the plaintiff could not maintain the action because of this preceding general assignment."

The controversy here is not between Shortlidge and his assignee for the benefit of creditors. The latter is not now asserting title against the former by attempting to wrest some-

thing from him which had passed under the deed of assignment
and is still in his hands; but the effort is to take from the
estate of the decedent that which had passed to her by assign-
ment from Shortlidge, at a time when, disowned by his as-
signee, he had a right to assign it and creditors had a right to
seize it. Having so passed from him, it is now beyond the
reach of the appellee.

After the finding already quoted of the circumstances under
which the policy was assigned to Marie Dixon Jones, the court
concluded: "It is clear that Miss Jones is to be regarded as
a purchaser from Shortlidge for value. Her marriage to him
upon consideration whereof the assignment was made, was a
valuable consideration. It is not shown that she knew of
Shortlidge's insolvency or of an intent on his part by means of
this transfer to her to defraud his creditors. It does not ap-
pear that she knew of the general assignment of his assets to
Howard for the benefit of his creditors. . . . We are clear
that as between Howard, the assignee for the benefit of Short-
lidge's creditors, and the lady who became Shortlidge's wife,
the right of the latter to Shortlidge's policy or the moneys
payable upon it was the superior. Her claim to the policy is
to be preferred to Howard's because of the laches on the part
of the latter." But, notwithstanding the foregoing, the learned
judge was of the opinion that it would be inequitable to award
the proceeds of the policy to the administrator of Marie D. J.
Shortlidge, deceased, because, as she had died intestate, leav-
ing neither children nor creditors, her whole estate would pass
to her husband, and he ought not to be allowed to receive the
money as against his assignee for the benefit of creditors. In
this reason we cannot concur, and, in refusing to adopt it, need
only say that the title of the deceased to the policy was abso-
lute, and passed to her administrator, now the Fidelity Insur-
ance, Trust & Safe Deposit Company. The proceeds of the
policy belong to her estate, and, under the intestate laws, pass
to her husband through her administrator, subject to his assign-
ments since her death and the attachments issued against him,
as if he had never owned the policy and his wife had acquired
the title to it through a stranger. The right of her adminis-
trator to receive the money is a legal one, and to it payment
must be made. With a decree awarding the proceeds of the

policy to it, the jurisdiction of the common pleas is at an end. That court cannot distribute for the orphans' court, even for equitable reasons. To the latter court the administrator must submit its account, where distribution will be made to those entitled to receive the money paid to it under this proceeding.

The policy was abandoned by the assignee; there was cause for its abandonment, and there was a right to abandon it. The decree of the court below is, therefore, reversed, and it is now ordered, adjudged and decreed that the Provident Life & Trust Company pay to the Fidelity Insurance, Trust & Safe Deposit Company, administrator of Marie Dixon Jones Short-lidge, deceased, the sum of $7,022.11, with interest at two per cent, from October 18, 1900, less the costs incurred by it in the proceedings below, in which is to be included an attorney's fee of $50.00, and, upon such payment, it is discharged from all liability upon its policy No. 70,934, issued May 18, 1897; each party in the proceeding below to pay his or her own costs, the costs on this appeal to be paid by Garrett E. Smedley, the substituted assignee.