In re WISEMAN & WALLACE.

(District Court, E. D. Pennsylvania. February 14, 1908.)

No. 1,321.

BANKRUPTCY—ASSETS—ABANDONMENT BY TRUSTEE.

Prior to the bankruptcy of a firm it had recovered judgment against R., which was shown on the bankrupt's books. The account was uncollectible, and was not entered on the bankrupt's schedules, nor was anything done with it until after settlement of the bankrupt's estate, when, after the death of R.'s father, the judgment was revived and an attachment executed against his executors, which resulted in judgment against the executors. Several months after this the trustee in bankruptcy was informed of these proceedings and immediately communicated with the attorney holding the claim for collection, and the proceeds of the claim were subsequently paid to the trustee. Held, that the trustee was under no duty to take action either to sell or collect the judgment while it was uncollectible, and, having asserted his right to the proceeds as soon as he was informed that there was a probability of collecting it, his mere nonaction prior thereto and until after the settlement of the estate did not constitute an abandonment of the claim of the bankrupts.

In Bankruptcy. On certificate of referee concerning claim of bankrupt to assets of the estate.

Francis J. Maneely, for claimant.
Rudolph M. Schick, for trustee.

J. B. McPHERSON, District Judge. The question for decision arises upon certain undisputed facts, which are thus stated upon the brief of the claimant's counsel:

"The voluntary petition of bankrupts was filed April 9, 1902, and adjudication same day.

"Account of trustee and dividend in July, 1904.

"Horace T. Royer was indebted to bankrupts in July, 1895, in the sum of $970.33. October 30, 1895, he gave them a judgment note for $810.83, which on the same day they sent to John Faber Miller, Esq., of Norristown, to be entered of record. The account was uncollectible, and nothing more was done with it. The account was not entered on the schedule of the bankrupts, doubtless because in their opinion it was worthless.

"The books of the bankrupt were turned over to the trustee promptly after his appointment. The ledger showed this account, and on the page was noted the above facts as to the judgment note.

"In November, 1904, Dr. Lewis Royer, the father of Horace T. Royer, died, and immediately after the probate of the will the attorney, Mr. Miller, issued a sci. fa. to revive an attachment execution against the executors. This resulted in a judgment against the executors.

"On June 8, 1905, the trustee was informed of these proceedings and immediately communicated with the attorney.

"John Wiseman, the survivor of the bankrupts, claimed this account as his property, either by virtue of an assignment to him of all scheduled as-

sets. which assignment had been made by authority of the creditors, or by reason of the failure of the trustee to accept the judgment as an asset of the estate. The trustee claimed that the account had not passed by the assignment because it had not been scheduled.

"By arrangement between the trustee and the bankrupt, the trustee's name was substituted on the record of the judgment as plaintiff, and the question of title to the fund was reserved to be decided after the fund was collected.

"The amount realized from the claim after deduction of costs and Mr. Miller's fee is $1,004.38, which is in possession of the trustee.

"Mr. Wiseman now claims the fund, not on the ground that it passed to him under the assignment, but on the ground that the trustee had elected not to accept the claim as an asset of the estate, and that it had therefore reverted to the bankrupts."

The learned referee (Richard S. Hunter, Esq.) decided that the trustee had not abandoned the judgment or refused to accept it, and declined to award the fund to the claimant. I agree with this ruling, which needs little support beyond what is furnished by the facts themselves. It may perhaps be added, however, that the claimant offered no direct evidence to establish his averment that the judgment had been abandoned or declined as onerous or unprofitable to the estate, reliance being placed solely on the trustee's failure to proceed upon the judgment, and not in any degree on his affirmative conduct or declarations. This position might be sound enough, if the trustee had been called upon during the first two years of his administration to take any active step toward the collection of this debt. In that event, failure to move might be one circumstance, at least, bearing upon the question whether he had refused to accept and prosecute the claim of the estate against this particular debtor. But it will be observed that there is no evidence from which it can be found that the trustee had any reason to suppose that the judgment would repay an effort to collect it before June 8, 1905, when it is agreed that he acquired such knowledge and immediately acted upon it by communicating with the attorney in whose hands the matter had been previously placed by the bankrupts, and by taking up at once the litigation that was afterwards carried on to a successful conclusion. Indeed, as will also be observed, it does not appear satisfactorily that the trustee even knew that the judgment was in existence until he received information to that effect from the attorney who was in charge of the case. The single circumstance that the bankrupts' ledger contained a memorandum of the debt and the judgment is hardly sufficient to bring notice home to the trustee; for, without fault of his own, the memorandum might easily have escaped his attention; and when it is considered, further, that the title to the judgment passed to the trustee by operation of law at the time of the adjudication, and that the claimant was bound to prove (in order to rebut the ordinary presumption of continuing ownership) that the title had been refused or abandoned by the trustee and had therefore revested in the bankrupts, it is not perhaps without significance to note that the claimant did not ask the trustee himself whether he actually knew of the judgment, and had declined to accept title thereto, or had abandoned it afterwards. But, without laying stress on the failure to call an obviously important witness, and assuming for present purposes that the trustee had actual

knowledge of the judgment, it is material to note that the debt was concededly uncollectible until November, 1904, several months after the bankrupt estate had been closed. In view of this fact, the trustee was certainly not called upon to make any effort during the course of administering the estate to collect a debt which by the very concession would not then have repaid the cost of execution. It is true that the trustee might have sold the judgment, or even refused to have anything to do with it; but either step would have been affirmative in its nature, and there is no pretense that any affirmative act or declaration has been shown from which the trustee's refusal or abandonment can be inferred. In my opinion, neither refusal nor abandonment can be properly established by mere silence or inaction under the circumstances disclosed by the foregoing statement of facts. When there is a duty to act, either actually known to exist or legally imposed by reason of such notice as is the equivalent of knowledge in fact, failure to stir may be significant; but, when no such duty exists, mere inaction furnishes ordinarily an unsafe basis for the inference that doing nothing should be held to be as weighty as conduct.

The principal cases cited by the claimant's counsel—Sparhawk v. Yerkes, 142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915; Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Dushane v. Beall, 161 U. S. 513, 16 Sup. Ct. 637, 40 L. Ed. 791; and First Nat. Bank v. Lasater, 196 U. S. 115, 25 Sup. Ct. 206, 49 L. Ed. 408—do not support his position, as a brief consideration will, I think, make clear. In Sparhawk v. Yerkes the controversy was over two membership seats owned by Yerkes, a bankrupt broker, on the New York and the Philadelphia Stock Exchanges. The assignee in bankruptcy knew that the seats had belonged to Yerkes and that membership had been suspended by reason of his insolvency. Other facts are thus stated in the opinion (page 13 of 142 U. S., page 106 of 12 Sup. Ct. [35 L. Ed. 915]):

"At the time of the filing of the petition in bankruptcy, November 10, 1871, and of the bankrupt's discharge, October 3, 1873, these suspended memberships were confessedly of no value to the estate and were so appraised, because no possible dividend could be paid equal to the excess of the debts due members over the then value of the memberships.

"It may be assumed that the assignees regarded the expenditure of money in the payment of annual dues and charges, and in settlement with creditor members, as not justifiable under the circumstances. At all events, for 12 years after their appointment, and 10 years after the bankrupt's discharge, they took no steps to obtain possession, and asked no assistance in that regard from either the bankrupt or the courts; made no payments to the associations and attempted no settlements with the creditor members; considered the realization of anything as substantially impracticable in view of the situation and of judicial decision; and contented themselves with the hope that masterly inactivity might enable them to assert a claim if by the efforts of the bankrupt the load of debt which weighed down the right to the seats was lifted, and in the progress of years the value of such seats happened to increase, instead of diminish.

"Nor did they seek a sale, nor to compel the creditor members to realize upon or agree to a valuation of the seats and prove only for the balance of their claims, under Rev. St. § 5075, if applicable, or otherwise to gain the benefit of such reduction as might thus be obtained, but, on the contrary, allowed these creditors to prove their debts in full, and paid dividends thereon, without objection.

"Except that they notified the exchanges of their appointment, they did nothing in the way of taking possession or of the preservation of the property, and for several years prior to the reinstatement they communicated neither with the bankrupt nor the exchanges in regard to the matter. Their conduct can be viewed in no other light than that of an election not to accept these rights as property of the estate."

Plainly this was "laches and acquiescence of the most pronounced character" (page 16 of 142 U. S., page 107 of 12 Sup. Ct. [35 L. Ed. 915]) differing materially from the situation now before the court.

Sessions v. Romadka is a similarly clear case of an active election by an assignee in bankruptcy. The following quotation from page 39 of 145 U. S., page 801 of 12 Sup. Ct. (36 L. Ed. 609), shows the ground upon which the court's decision is put:

"In this case the assignee had taken a year to wind up the estate, and had given no sign of his wish to assume this property, if, indeed, he knew of its existence. On being asked with reference to it by the proposed purchaser, he replied that the estate was all settled up, that he had no power to do anything in the matter, and that Poinier (the bankrupt) was the only one who could give a title. A plainer election not to accept can hardly be imagined. Granting that up to that time he had known nothing about the patent, it was his duty to inquire into the matter if he had any thought of accepting it, and not to mislead the plaintiff's agent by referring him to the bankrupt as the proper person to apply to. Under the circumstances, plaintiff could do nothing but purchase of Poinier. Bearing in mind that no claim to this property is now made by the assignee, but that his alleged title to it is set up by a third person, who confessedly has no interest in it himself, it is entirely clear that the defendants ought not to prevail as against a purchaser who bought it of the bankrupt after the assignee had disclaimed any interest in it.

"Had the existence of this patent been concealed by the bankrupt, or the assignee had discovered it subsequently—after his discharge—and desired to take possession of it for the benefit of the estate, it is possible that the bankruptcy court might reopen the case and vacate the discharge for that purpose. Clark v. Clark, 17 How. 315, 15 L. Ed. 77. But it does not lie in the mouth of an alleged infringer to set up the right of the assignee as against a title from the bankrupt acquired with the consent of such assignee.

"It is quite evident from the facts stated that this patent, which seems to have been the cause of Poinier's insolvency, was thought to be of little or no value, that the assignee so regarded it, and that its real value was only discovered when the plaintiff had brought to bear upon the manufacture of the device his own skill and enterprise."

In Dushane v. Beall, 161 U. S. 516, 16 Sup. Ct. 639, 40 L. Ed. 791, the court states the general rule to be that:

"If with knowledge of the facts, or being so situated as to be chargeable with such knowledge, an assignee, by definite declaration, or distinct action or forbearance to act, indicates, in view of the particular circumstances, his choice not to take certain property, or if, in the language of Ware, J., in Smith v. Gordon, 6 Law Rep. 313, Fed. Cas. No. 13,052, he, with such knowledge, 'stands by without asserting his claim for a length of time, and allows third persons in the possession of their legal rights to acquire an interest in the property,' then he may be held to have waived the assertion of his claim thereto."

The fact appearing, however, that the assignee in bankruptcy had for the first time, so far as the record disclosed, discovered on August 10, 1888, that the bankrupt had a possible or probable interest in a certain suit against a railroad company, and it appearing, further,

that the assignee had promptly taken part in the litigation and actively promoted the bankrupt's right, it was held that the court below was in error in deciding that the assignee had chosen to abandon the claim; the decision by that court having apparently been put upon the single ground that the litigation had been pending for several years before the assignee intervened, and therefore that he must be held to have abandoned the bankrupt's interest therein. The Supreme Court declared this ground to be erroneous, because there was no evidence to justify the conclusion that [the assignee] had knowledge or sufficient means of knowledge of its existence prior to August 10, 1888 —a reason which may be applied with much force to the lack of evidence in the case now under consideration.

And, finally, First National Bank v. Lasater is in my opinion an authority against the claimant, rather than in his favor. The bankrupt there was entitled to recover usury paid to the bank, but did not schedule the claim among his assets or advise the trustee or the creditors of its existence, and, so far as appeared, the trustee knew nothing about the right of action from any other source. Soon after the bankrupt's discharge he put the claim in suit, and it was held that he could not recover, because the title of the trustee had not been divested, either by his act or by his neglect. Mr. Justice Brewer, speaking for the court, said, inter alia (page 118, of 196 U. S., page 208 of 25 Sup. Ct. [49 L. Ed. 408]):

"The question then presented is whether this right of action, having once passed to the trustee in bankruptcy, was retransferred to J. L. Lasater upon the termination of the bankruptcy proceedings; he having returned no assets to his trustee, and having failed to notify him or the creditors of this claim for usury, and beginning this action within less than two months after the final discharge of the trustee. We have held that trustees in bankruptcy are not bound to accept property of an onerous or unprofitable character, and that they have a reasonable time in which to elect whether they will accept or not. If they decline to take the property, the bankrupt can assert title thereto. American Fife Co. v. Garrett, 110 U. S. 288, 295, 28 L. Ed. 149, 152, 4 Sup. Ct. 90; Sparhawk v. Yerkes, 142 U. S. 1, 35 L. Ed. 915, 12 Sup. Ct. 104; Sessions v. Romadka, 145 U. S. 29, 36 L. Ed. 609, 12 Sup. Ct. 799; Dushane v. Beall, 161 U. S. 513, 40 L. Ed. 791, 16 Sup. Ct. 637. But that doctrine can have no application when the trustee is ignorant of the existence of the property and has had no opportunity to make an election. It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it. If the claim was of value (as certainly this claim was, according to the judgment below), it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts, and still assert title to the property."

As it seems to me, these authorities show clearly that the learned referee was right in deciding that the fund in dispute should not be awarded to the claimant.

The proceedings are therefore affirmed.