## In re LIGHTHALL.

### (District Court, N. D. New York.  March 29, 1915.)

### No. 347.

1. BANKRUPTCY ⬡438—DISCHARGE—EFFECT.

A discharge in bankruptcy does not release the bankrupt's estate, which existed and passed to his trustee in bankruptcy, from liability to pay proved and allowed debts existing prior to the filing of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 626; Dec. Dig. ⬡438.]

2. BANKRUPTCY ⬡438—EFFECT OF CLOSING OF ESTATE.

The closing of an estate in bankruptcy does not transfer to the bankrupt the title to unadministered assets, title to which has vested in the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 626; Dec. Dig. ⬡438.]

3. BANKRUPTCY ⬡148—PROPERTY PASSING TO TRUSTEE—PROPERTY BECOMING VALUABLE AFTER CLOSING OF ESTATE.

A bankrupt scheduled as an asset of his estate a claim against S., who had previously made an assignment for the benefit of creditors. S. owned an interest in an insurance policy on the life of a third party, which was of little, if any, cash value, as it was subject to cancellation in certain contingencies and would lapse if premiums were not paid during the life of insured. The assignee continued to hold the policy, and the trustee, without selling the claim against S. or disposing thereof, settled his accounts and was discharged. The premiums on the policy were paid, but not by the bankrupt. The trustee did nothing indicating a purpose to abandon the claim or reinvest the bankrupt with title, except to report the claim as worthless, and the bankrupt did nothing indicating a purpose to take possession of the claim and exercise ownership over it. *Held*, that, under Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1913, § 9654), vesting in the trustee all property which the bankrupt could have transferred or which might have been levied upon and sold under judicial process against him, and all rights of action arising upon contracts, where upon insured's death the amount of S.'s interest in the policy was paid to his assignee for distribution, the dividend on the bankrupt's claim belonged to the estate in bankruptcy, and was not property acquired by the bankrupt after the adjudication, and hence the estate could be reopened for the administration of such dividend, under section 2, subd. 8 (Comp. St. 1913, § 9586), authorizing bankruptcy courts to reopen estates closed before being fully administered.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 194, 625; Dec. Dig. ⬡148.]

In Bankruptcy. In the matter of John H. Lighthall, bankrupt. On an application to vacate an order reopening the estate, and for the payment to Mary J. Lighthall, administratrix of the bankrupt, of certain money. Motions denied.

This is an application by Mary J. Lighthall, as administratrix of the estate of John H. Lighthall, the above-named bankrupt, in her own behalf and that of her coadministratrix, for an order of this court vacating an order heretofore made opening the estate of the above-named bankrupt, on the ground it had not been fully administered, and also directing Harry P. Pendrick, the trustee of the estate in bankruptcy of said John H. Lighthall, to pay over to said administratrices the sum of $349.25 which came to the hands of the said trustee on or about February 15, 1915, on the ground, principally, that the

estate of the bankrupt had been fully administered, and that the said sum of $349.25 was "after-acquired property"; that is, property acquired by the bankrupt after he was adjudicated a bankrupt.

Rockwood & McKelvey, of Saratoga Springs, N. Y., for petitioners.

Corliss Sheldon, of Saratoga Springs, N. Y., for trustee in bankruptcy.

RAY, District Judge (after stating the facts as above). On or about the 9th day of January, 1901, John H. Lighthall filed his voluntary petition in bankruptcy in this court, and such proceedings were had that he was adjudicated a bankrupt and said Harry P. Pendrick was duly appointed and qualified as trustee of his estate in bankruptcy.

In the schedules filed by such bankrupt there was set forth and stated as an asset of the estate a claim of $1,187 held and owned by said John H. Lighthall against one Moses C. Smith, who had then made an assignment for the benefit of his creditors to one John H. Hall. The assignee of Lighthall had paid on this claim a dividend of 50 per cent. At the time said Lighthall was so adjudicated a bankrupt, said Moses C. Smith was the owner of a one-fourth interest in a life insurance policy of $5,000 on the life of one Frederick M. Smith. It was due and payable on the death of said Frederick M. Smith, and, of course, would lapse if the premiums were not paid, and was subject to cancellation in certain contingencies. At that time it was of not much cash value, if of any value. How long premiums would have to be paid was not known.

The trustee in bankruptcy of Lighthall did not sell said claim, or make any disposition thereof. The assignee of Moses C. Smith, who owed Lighthall, made no disposition of such policy, but continued to hold same. About July 3, 1903, the estate of said Lighthall in bankruptcy was closed and the accounts of the trustee settled, and he was discharged. No order was made transferring the claim against Moses C. Smith back to the bankrupt, Lighthall, or disposing of it in any way. Thereafter, and on or about the 4th day of October, 1906, said John H. Lighthall, the bankrupt, died intestate, and the said Mary J. Lighthall, his widow, and one Lillian E. Roach, were duly appointed administratrices of his estate. Payments on the said policy of insurance were kept up and it remained in force. Said Frederick M. Smith, on whose life said policy of insurance was issued, died in the year 1913, and said one-fourth interest therein so owned by said Moses C. Smith was paid to said John H. Hall as assignee of said Moses C. Smith, who was so indebted to said Lighthall and to his trustee in bankruptcy on his appointment as such.

February 2, 1915, on petition of B. J. Murray, a creditor of said John H. Lighthall, existing at the time of said adjudication and who presented his claim, but was not paid, the District Judge of the Northern District of New York, where said bankruptcy proceedings were had, made an order reopening the said bankruptcy proceedings, on the ground said estate in bankruptcy had not been fully administered. February 15, 1915, the County Court of the County of Herkimer, N. Y., having jurisdiction of the estate of Moses C. Smith and of his assignee, Hall, made an order and decree directing said assignee

to pay to said Harry P. Pendrick, as trustee in bankruptcy of said John H. Lighthall, said trustee having given a new bond, the said sum of $349.25, the dividend on said claim of said John H. Lighthall on the settlement of the accounts of said assignee of Moses C. Smith, and which dividend was made possible by the death of said Frederick M. Smith and the payment of said policy of life insurance, and pursuant to said order or decree said sum or dividend was paid to said trustee in bankruptcy accordingly. The said administratrices of the estate of said John H. Lighthall claim said money, and move to have the order reopening the estate in bankruptcy of John H. Lighthall revoked or set aside, and the trustee directed to pay such money to them.

The contention is that such estate in bankruptcy had been fully administered, as the claim against Moses C. Smith was of no value when the estate was closed, as stated, and that the interest in such fund paid on the policy of insurance and derived in the manner and through the channels mentioned was and is after-acquired property—that is, property acquired by Lighthall, or his estate, subsequent to the time he was adjudicated a bankrupt—and that it goes, not to his trustee in bankruptcy, but to the administratrices of his estate for distribution to his widow and next of kin entitled thereto, if any, after payment of creditors whose claims came into being after Lighthall filed his petition in bankruptcy.

[1, 2] It should be stated that Lighthall was discharged in bankruptcy, but this did not release his estate, which existed and passed to his trustee in bankruptcy, from liability to pay the proved and allowed debts existing prior to the filing of the petition in bankruptcy. The closing of the estate in bankruptcy did not operate to transfer the title of unadministered assets, the title to which had vested by operation of law in the trustee, back to the bankrupt. If such were the effect of closing the estate of a bankrupt, it would be of no avail to reopen the estate when not fully administered. If title to property vested in the trustee is divested by closing the estate before it is fully administered, there would be nothing to administer after the reopening, and reopening the estate would be of no avail to creditors who existed prior to adjudication and who duly proved their claims.

[3] Subdivision 8 of section 2 of the Bankruptcy Act vests the bankruptcy court with power to "close estates whenever it appears that they have been fully administered, by approving the final accounts and discharging the trustees, and *reopen* them whenever it appears they were closed before being fully administered." Is this money in question "after-acquired property?" The claim or demand against Moses C. Smith and his assignee in the state court under the general assignment laws of the state of New York existed when the petition in bankruptcy was filed, and it was duly scheduled as an asset of the bankrupt's estate, and title thereto vested in the trustee when duly qualified. Section 70a of the Bankruptcy Act provides:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged

a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; * * * (5) property which prior to the filing of the petition [in bankruptcy] he could by any means have transferred or which might have been levied upon and sold under judicial process against him; * * * (6) rights of action arising upon contracts. * * *"

There was no composition in this case, and, as stated, no disposition was made by the trustee or court of the claim against Smith. Title remained in him, or in the estate. The bankrupt, Lighthall, prior to his death and after bankruptcy, did nothing, made no payment of premium on the policy of insurance in whole or in part, to keep the policy alive or give value to the claim against Moses C. Smith. It is, of course, true that this claim against Moses C. Smith, owned by the estate in bankruptcy and held by the trustee for the benefit of those creditors who had proved their claims in the bankruptcy proceeding, increased in value as the premiums on the life insurance policy were paid and Frederick M. Smith, the insured, grew older; but the bankrupt, John H. Lighthall, put no money into it. He did nothing to increase the value of the claim. He did not own it. He had surrendered the claim to the trustee in bankruptcy of his estate, of which this claim was a part. So far as Lighthall and his estate is concerned, this increase in value of this claim was the result of the work of other and outside parties, and their acts were not of his procurement, or done for his benefit. He had no part in them. This claim was not his. He had no interest in it. All increase in its value inured to the benefit of his trustee in bankruptcy, for the benefit of the creditors of Lighthall, who existed as such prior to the bankruptcy, and who had proved their claims.

If a bankrupt, on filing his petition in bankruptcy, owns a note of $1,000 against B., and schedules it as an asset, and B. is at the time worthless and unable to pay it, or any part of it, the note is an asset, and title passes to and vests in the trustee, when appointed and qualified. It remains there until sold or disposed of. If the estate is closed, and the trustee discharged, his title is not divested and title revested in the bankrupt. If later B. falls heir to $10,000 and becomes able to pay the note, and is ready and willing to pay, to whom shall he pay? Who may sue and collect on the note, and for whose benefit is the payment, if voluntarily made, or the recovery, if successful suit is brought, to inure? As to the one owing the debt to the trustee in bankruptcy his property is "after-acquired property"; but as to the bankrupt himself it is not "after-acquired property." It is not his, and he has had nothing to do with producing or acquiring it. Lighthall had no interest in this policy of life insurance, and no ownership in it or in its proceeds when collected, except that indirectly he had an interest to have the dividend due from the assignee of Moses C. Smith paid to the trustee in bankruptcy and applied in reduction of the claims owed by him when he filed his petition in bankruptcy. This claim against Moses C. Smith was not burdensome property and there was no disclaimer.

It is true, of course, that the trustee only acquires title to such property as was owned by the bankrupt at the time the petition in bankruptcy was filed; but here the claim against Moses C. Smith was

the property acquired, and he and the estate in bankruptcy represented by him were entitled to any accretion or increase in value, certainly any increase in value not due to some act or outlay of money or labor made by the bankrupt himself, after the petition was filed. And even an increase in the value of an asset, title to which has passed to the trustee, due to or caused by the voluntary act of, or outlay of money by, the bankrupt after the petition was filed would undoubtedly inure to the benefit of the estate in bankruptcy and not the bankrupt. But this is aside from the question at issue here, as there was no abandonment of the claim against Moses C. Smith, and no exercise of ownership over it by the bankrupt or his personal representatives after his death and their appointment. The case is not covered by First National Bank of Jacksboro v. Lasater, 196 U. S. 115, 117–119, 25 Sup. Ct. 206, 49 L. Ed. 408, or Sparhawk v. Yerkes, 142 U. S. 1, 12, 12 Sup. Ct. 104, 35 L. Ed. 915, or Dushane v. Beall, 161 U. S. 513, 516, 16 Sup. Ct. 637, 639, 40 L. Ed. 791.

In Dushane v. Beall, supra, the court said:

"If with knowledge of the facts, or being so situated as to be chargeable with such knowledge, an assignee [in bankruptcy] by definite declaration or distinct action, or forbearance to act, indicates, in view of the particular circumstances, his choice not to take certain property, or if, in the language of Ware, J., in Smith v. Gordon [Fed. Cas. No. 13,052], he, with such knowledge, 'stands by without asserting his claim for a length of time, and allows third persons in the prosecution of their legal rights to acquire an interest in the property,' then he may be held to have waived the assertion of his claim thereto. In Sparhawk v. Yerkes [142 U. S. 1, 12 Sup. Ct. 104, 35 L. Ed. 915] we held that as the conduct of the assignees was such as to show that they did not intend to take possession of the assets in controversy, as they avoided assuming any liability in respect thereof, and as they allowed the bankrupt after his discharge by the expenditure of labor and money to save the assets and render them valuable, they could not be permitted to assert title against him."

But here the trustee in bankruptcy was not called upon to act until the death of Frederick M. Smith, as he could do nothing other than he did, and the bankrupt did nothing, and made no outlay of time, labor, or money. Nothing was done by the trustee showing a purpose to abandon the claim, and nothing was done by the bankrupt evincing a purpose to take possession of the claim and exercise ownership over it. Mere delay in not attempting to collect an uncollectible claim, and truthfully reporting it as of no value when accounting to the court, in the absence of action by the bankrupt in asserting ownership over it, cannot be held to constitute an abandonment of the claim or a reinvestment of title thereto in the bankrupt. There was no declination of or refusal to accept title to the claim, and the circumstances evince no purpose of the trustee to abandon it, or of the bankrupt to assert ownership over it. In re Frazin et al., 183 Fed. 28, 105 C. C. A. 320, 33 L. R. A. (N. S.) 745, was the case of a lease, which, under Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (Comp. St. 1913, § 9654), stands on a different footing. See, also, Sessions v. Romadka, 145 U. S. 29, 39, 12 Sup. Ct. 799, 36 L. Ed. 609.

There was nothing the trustee in bankruptcy could have done, or could do, except to report to the court, and have his accounts settled,

and await results. He was not bound to sell this claim, *then* substantially worthless, at the peril of being held to have abandoned it to the bankrupt. In Buckingham v. Buckingham, 36 Ohio St. 68, it was held that, when a trustee *declined* to take a debt or claim due to the bankrupt, it became the bankrupt's right to sue upon and collect it himself. But here there was no declination.

My conclusion is that the motions must be denied. So ordered.