## Weeks et al. v. Dickson et al.

*Conlen, LaBrum & Beechwood,* for plaintiffs.

*James A. Walker,* for defendant.

*Townsend, Elliott & Munson,* for garnishee.

MACNEILLE, P. J., March 13, 1945.—On May 28, 1940, judgment was entered in this case by plaintiffs against defendant, Arthur G. Dickson (hereinafter referred to as Dickson), in the sum of $19,243.69. An attachment sur judgment was issued against the Provident Trust Company as garnishee on this judgment, interrogatories were filed, an answer to the interrogatories filed by the garnishee, and on behalf of plaintiffs there was filed a motion for judgment against

the garnishee and it was agreed that the court should consider on this motion the testimony taken in a similar case before Judge Oliver.

Erskine Hazard, grandfather of Arthur G. Dickson the judgment debtor, died February 26, 1865, leaving a will wherein he gave a share of his estate in trust for Dickson's mother, Fanny Hazard Dickson, for life, with a general power of appointment by will as to the principal, and providing that in default of appointment the fund should go to her children in equal shares. Fanny Hazard Dickson died testate on August 17, 1913, and in her will exercised the power by appointing the fund to her husband, Dickson's father, for life, and on his death one third of the principal to Dickson, her only child, absolutely, and the other two thirds to Dickson for life with remainder to his issue, and in default of issue to her nephews and nieces then living per capita.

The orphans' court awarded the fund to Dickson's father for life, without security other than his own bond, subject to Dickson's approval, and, in lieu of such bond, Dickson and his father thereupon entered into an agreement with Provident Life & Trust Company of Philadelphia (now Provident Trust Company of Philadelphia) whereby that company agreed to hold the fund during the father's life, paying him the income, and to deliver it to Dickson at the father's death. Upon the death of his father, on May 28, 1915, Dickson, to whom the assets lodged with the trust company were delivered in accordance with the agreement, voluntarily executed an irrevocable deed of trust, dated July 8, 1915, transferring back to the Provident Trust Company securities representing the two-thirds interest in which he had only a life estate under the terms of his mother's will, in trust to pay the income to himself during his life and upon his death to hold and deliver the said assets in accordance with the terms of the will of his mother, reciting as his reason for so doing that he deemed such arrangement expedient for the benefit

and protection of all parties in interest. By the terms of his mother's will it was expressly provided that Dickson should be entitled to hold and use the two-thirds interest left him for life only "without any security or liability to account" and that "his statement of accounts shall be accepted as final and binding on all of the parties in interest."

Subsequent to the deed of 1915, the Supreme Court, in the case of Cox et al. v. Dickson, 256 Pa. 510, had occasion to consider the validity of the exercise by Dickson's mother of her power of appointment, deciding that the appointment was void as violating the rule against perpetuities, since Dickson was not living at the time of the death of Erskine Hazard, donor of the power, and consequently that Fanny Hazard Dickson's entire share in the estate of Erskine Hazard passed absolutely to Dickson, under the provisions in the will of Erskine Hazard giving her share to her children in default of appointment. Several years after this decision, Dickson, in 1921, filed a bill in equity (Dickson v. Provident Life & Trust Company, Court of Common Pleas No. 5 of Philadelphia County, June term, 1921, no. 5348), asking that the court direct the return to him of the securities held by the trust company under the deed of July 8, 1915, and that the declaration of trust be canceled. The nephews and nieces of Fanny Hazard Dickson intervened, contesting the right of Dickson to cancellation, and, after hearing, the court filed an adjudication concluding that Dickson was not entitled to the relief requested and that his bill should be dismissed. No exceptions were ever filed by Dickson to the findings and conclusions of the court in that proceeding and, as a result, Provident Trust Company continued to administer the fund as before, paying the income to Dickson, until his adjudication in bankruptcy by the United States District Court for the Eastern District of Pennsylvania on May 28, 1932. By order of the bankruptcy court, Dickson's life interest in the

fund was exposed to sale at public auction and was purchased by Henry S. Drinker, Jr., who in turn transferred all his right, title and interest as such purchaser to Fidelity-Philadelphia Trust Company, on December 2, 1932, following Dickson's discharge in bankruptcy, in trust subject to a spendthrift provision, to pay the income to Dickson for life and on his death to pay any unpaid balance to his wife, Janet L. B. Dickson. No interest in the fund other than the life interest was scheduled by Dickson in the bankruptcy proceeding.

It is apparent that there remains in Dickson a vested reversionary interest in case of his surviving all of the nephews and nieces, and it is this interest that the plaintiffs in this case are attempting to attach. This reversionary interest belonged to Dickson long before he went into bankruptcy, and it should have been scheduled as an asset in the bankruptcy, and disposed of by the trustee in bankruptcy, and the only reason that it was not disposed of at that time was because it was not listed by Dickson as an asset of his in the bankruptcy proceeding.

In the case of McCahan's Estate—Taggart's Appeal, 312 Pa. 515, the Supreme Court used the following language (p. 518):

"Where the orphans' court has once acquired control over property, the jurisdiction of all other courts, though concurrent, is subject thereto. It may hear and determine all questions respecting title, possession and control of the litigated property: Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734; Straton v. New, Trustee, 283 U. S. 318. See section 23 of the Bankruptcy Act of July 1, 1898, clause 541, 30 Stat. 552, (U. S. Ann. Code, Title 11, section 46). It was said by the United States Supreme Court in Bardes v. Hawarden Bank, 178 U. S. 524, at 537, that the present Bankruptcy Act clearly manifests the intention of congress 'that controversies, not strictly or properly part of the proceedings in bankruptcy, but independent

suits brought by the trustee in bankruptcy to assert a title to money or property as assets of the bankrupt against strangers to those proceedings, should not come within the jurisdiction of the District Courts of the United States . . .' "

In the case of Saylor's Estate, 86 Pa. Superior Ct. 15, the court used the following language (p. 19) :

"A discharge in bankruptcy does not transfer to the bankrupt the assets of his estate in bankruptcy; it only relieves him of liability for any scheduled debts which he owed at the date of his being adjudicated a bankrupt; leaving the creditors to look to the bankrupt estate for payment in whole or in part.

"Nor does the fact that the trustee was discharged from his trust before the judgment was paid or collectible operate to pass title to unconverted property to the bankrupt, as long as his creditors remain unpaid. A new trustee can be elected and distribution of the proceeds made among those entitled thereto. It was done in In re Lighthall, 221 Fed. 791, a case very similar in its facts to this one.

"The Bankruptcy Act specifically authorizes the court having jurisdiction of bankruptcy proceedings 'to reopen them [bankrupt estates] whenever it appears that they were closed before being fully administered': Acts of July 1, 1898, c. 541, section 2, 30 Stat. 545; Feb. 5, 1903, c. 487, section 1, 32 Stat. 797; June 25, 1910, c. 412, sections 1, 2, 36 Stat. 838; Barnes' Federal Code, section 9087; Remington on Bankruptcy, section 2971, etc.; In re Newton, 107 Federal 429; In re Goldman, 129 Federal 212; In re Levy, 259 Federal 314, 316."

It is therefore apparent under the authority of the above-cited cases that this court has jurisdiction to determine whether this reversionary interest is to go back to the bankrupt estate of Dickson or is to be subjected to the attachment of plaintiff in this case, and, since it was an asset of the bankruptcy estate at the

time of the adjudication in bankruptcy, this vested reversionary interest remains there and Dickson has neither title to the same nor right of possession thereof, and therefore it cannot be attached by the creditor herein.

Therefore, the rule for judgment against the garnishee in this case is discharged.

---

It is clear that the reversionary interest must be paid only to a successor in the trust in the bankruptcy proceedings to be elected pursuant to the Federal Bankruptcy Act as trustee of the bankruptcy estate of Dickson, bankrupt, upon the re-opening of the same, and upon that eventuality we will entertain any proper proceeding within our jurisdiction.