## DUSHANE v. BEALL.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 184. Submitted March 2, 1896. — Decided March 16, 1896.

The limitation of two years made by Rev. Stat. § 5057 to suits and actions between an assignee in bankruptcy and persons claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, is applicable only to suits growing out of disputes in respect of property and of rights of property of the bankrupt which came to the hands of the assignee, to which adverse claims existed while in the hands of the bankrupt and before assignment.

Assignees in bankruptcy are not bound to accept property which, in their judgment, is of an onerous and unprofitable nature, and would burden instead of benefiting the estate, and can elect whether they will accept or not after due consideration and within a reasonable time, while, if their judgment is unwisely exercised, the bankruptcy court is open to compel a different course.

From the record in this case the court is constrained to the conclusion that the assignee should not have been held by the court below to have exercised the right of choice between prosecuting the claim and abandoning it, in the absence of any evidence whatever to justify the conclusion that he had knowledge, or sufficient means of knowledge, of its existence prior to August 10, 1888; and that therefore there was error in its judgment.

THIS was a garnishee proceeding in the Court of Common Pleas for Fayette County, Pennsylvania.

The record of that court shows the issue in favor of Alpheus Beall, on a judgment recovered by him against Abraham O. Tinstman, of an attachment execution, dated June 9, 1888, and service thereof accepted by the Pittsburgh and Connellsville Railroad Company, as garnishee, June 15, 1888.

August 10, 1888, McCullough, assignee in bankruptcy, appeared in the garnishment proceeding and participated in the choice of arbitrators, who made an award September 25, 1888, in favor of Beall, from which award an appeal was taken. December 13, 1889, the case was continued "on account of death of assignee of A. O. Tinstman; said case not to be again placed on trial list until after appointment and appearance of another assignee in bankruptcy." April 23, 1890, "Edward

Campbell, Esq., appears for J. M. Dushane, assignee in bankruptcy of A. O. Tinstman." September 11, 1890, "Joshua M. Dushane, assignee of A. O. Tinstman, appears in court and asks leave to be added to the record as defendant." Thereafter the case was submitted to the court for determination on a case stated, which embodied the following facts:

On the 5th of April, 1876, Abraham O. Tinstman was adjudicated a bankrupt in involuntary proceedings in bankruptcy, and during the same month Welty McCullough was appointed assignee, and took upon himself the duties thereof. The deed of the register in bankruptcy to the assignee conveyed the property which Tinstman possessed, was interested in, or entitled to, on the fifth day of April, but the schedule of assets filed by the assignee did not embrace the bankrupt's interest in a certain telegraph line hereinafter mentioned. Tinstman was duly discharged as a bankrupt, January 3, 1877.

In 1882, James L. Shaw instituted an action against the Pittsburgh and Connellsville Railroad Company in the Court of Common Pleas for Fayette County, Pennsylvania, to recover damages for a breach of contract relative to the maintenance and working of a line of telegraph between Uniontown and Connellsville, and on October 2, 1885, Tinstman was made one of the "use plaintiffs" therein.

After his discharge, Tinstman engaged in business, and became indebted to Alpheus Beall in the sum of $730.54, for which a judgment was rendered against him November 24, 1886, in said Court of Common Pleas.

Shaw recovered judgment against the railroad company for a considerable amount, covering damages from January 1, 1874, to September 1, 1887. Of these damages, the sum of $947.73 was Tinstman's share on account of an interest in the line of telegraph, which became his property "by subscription and payment therefor in the year 1865." McCullough died August 31, 1889, Joshua M. Dushane was appointed assignee in his place December 14, 1889, and intervened in this case, as such, September 11, 1890.

The Court of Common Pleas ruled that the assignee had

lost any right to the fund by reason of delaying claim thereto for an unreasonable time; and also that the limitation of two years prescribed by section 5057 of the Revised Statutes of the United States applied; and entered judgment in favor of Beall and against the railroad company as garnishee for $947.43, "the debt due by said garnishee to said Tinstman." The case was taken to the Supreme Court of Pennsylvania, which affirmed the judgment on the ground that the delay of the assignee was fatal to his claim. 149 Penn. St. 439. A writ of error from this court was then sued out.

*Mr. Edward Campbell* for plaintiff in error.

*Mr. Leoni Melick* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

We concur with the Supreme Court of Pennsylvania that the limitation of § 5057 of the Revised Statutes did not apply. That limitation is applicable only to suits growing out of disputes in respect of property and of rights of property of the bankrupt which came to the hands of the assignee, to which adverse claims existed while in the hands of the bankrupt and before assignment. *In re Conant*, 5 Blatchford, 54; *Clark* v. *Clark*, 17 How. 315, 321; *Phelps* v. *McDonald*, 99 U. S. 298, 306; *French* v. *Merrill*, 132 Mass. 525.

It is well settled that assignees in bankruptcy are not bound to accept property which, in their judgment, is of an onerous and unprofitable nature, and would burden instead of benefiting the estate, and can elect whether they will accept or not after due consideration and within a reasonable time, while, if their judgment is unwisely exercised, the bankruptcy court is open to compel a different course. *Sparhawk* v. *Yerkes*, 142 U. S. 1, 13; *Glenny* v. *Langdon*, 98 U. S. 20; *American File Co.* v. *Garrett*, 110 U. S. 288; *Smith* v. *Gordon*, 6 Law Rep., 313; *Amory* v. *Lawrence*, 3 Clifford, 523; *Ex parte Houghton*, 1 Lowell, 554; *Nash* v. *Simpson*, 78 Maine, 142; *Streeter* v. *Sumner*, 31 N. H. 542. The same principle is applicable also

to receivers and official liquidators.   *Quincy &c. Railroad* v.
*Humphreys*, 145 U. S. 82; *St. Joseph &c. Railroad* v. *Hum-
phreys*, 145 U. S. 105; *Sunflower Oil Co.* v. *Wilson*, 142 U. S.
313; *United States Trust Co.* v. *Wabash &c. Railway*, 150
U. S. 287; *In re Oak Pits Colliery Co.*, 21 Ch. Div. 322,
330.     And see *Bourdillon* v. *Dalton*, 1 Esp. 233; *S. C.*
Peake's N. P. 312; *Turner* v. *Richardson*, 7 East, 336;
Domat, vol. 2, part 2, Book I, Title I, sec. v.

If with knowledge of the facts, or being so situated as to
be chargeable with such knowledge, an assignee, by definite
declaration or distinct action, or forbearance to act, indicates,
in view of the particular circumstances, his choice not to take
certain property, or if, in the language of Ware, J., in *Smith*
v. *Gordon*, he, with such knowledge, "stands by without as-
serting his claim for a length of time, and allows third persons
in the prosecution of their legal rights to acquire an interest
in the property," then he may be held to have waived the
assertion of his claim thereto.

In *Sparhawk* v. *Yerkes* we held that as the conduct of
the assignees was such as to show that they did not intend to
take possession of the assets in controversy; as they avoided
assuming any liability in respect thereof; and as they allowed
the bankrupt after his discharge by the expenditure of labor
and money to save the assets and render them valuable, they
could not be permitted to assert title against him.   That was
a suit directly against the bankrupt, and this is in effect the
same, for Beall does not appear to occupy any better position
than Tinstman himself.   The judgment of the Supreme Court
of Pennsylvania proceeded upon the ground that the assignee
delayed too long in the assertion of his claim; that the litiga-
tion against the railroad company was protracted, uncertain,
and expensive; and that as the assignee did not appear to
have intervened in the matter until, as is stated, December 11,
1890, although the litigation began in the summer of 1882, he
must be held to have elected to abandon the claim, and could
not come in at so late a day and share in the fruits of litiga-
tion carried on by others; and on that view of the facts this
conclusion would seem to be correct if the record showed on

the part of Tinstman's assignee knowledge of the facts or wilful blindness in relation to them.

The Supreme Court manifestly referred to the intervention, in this proceeding, of Dushane, as assignee, which was, according to the case stated, September 11, 1890; but McCullough had intervened as assignee August 10, 1888, and he having died August 31, 1889, the cause was continued for the appointment and appearance of another assignee.

It is said by counsel for the assignee that the original litigation was commenced April 29, 1878, by a bill in equity, filed for the benefit of all the owners of the telegraph line, which it was decided January 9, 1882, would not lie; that thereupon the action at law, which resulted in judgment, was brought July 10, 1882, in the name of Shaw alone, the contract being under seal, but for the benefit of his assigns as well, who were very numerous; that afterwards some, but not all, of the "use plaintiffs" were added to the record; and that Tinstman's assignee just as much participated in the litigation, from April, 1878, to its end in 1888, as any of the others, whether named as plaintiffs or not. The difficulty with this is that very little, if any, of the matter stated can be deduced from the record, which fails to disclose that the assignee was represented in the litigation against the railroad company, or asserted his claim to his share of the fruits thereof, whether as a party of record under Shaw or otherwise prior to his intervention in this action, August 10, 1888.

The case stated does show that Tinstman was made one of the "use plaintiffs" in Shaw's action, October 2, 1885, but there is no explanation of how that entry came to be made, and nothing to indicate notice thereof to the assignee, or to charge him with notice assuming that he was ignorant of the claim.

On the other hand, the bankruptcy proceeding was involuntary, and it appears that the schedule of assets (the term schedule being used in the case stated as the equivalent of the inventory) was made by the assignee, the law providing that the order of adjudication should require the bankrupt to deliver a schedule of creditors and an inventory and valuation

of his estate, and if the bankrupt were absent or could not be found, such schedule and inventory should "be prepared by the messenger and the assignee from the best information they can obtain." Rev. Stat. §§ 5030, 5031. And this inventory, thus prepared by the assignee, the record affirmatively shows, did not embrace the bankrupt's interest in the telegraph line, as we must presume it would, if the assignee had had, or been able to obtain, information in respect thereof. Nor can we find elsewhere in the record any evidence that the assignee knew or was informed of Tinstman's interest prior to August 10, 1888. Counsel for the assignee argues that the fact is that Tinstman's interest was the ownership of certain shares of stock in the telegraph company which were included in the inventory and delivered to the assignee, but the exact contrary appears from the case stated. Nor does the fact appear, which he likewise insists upon, that the assignee not only did not abandon, but actively asserted, his claim.

The question whether the assignee in bankruptcy was entitled to this claim was clearly a Federal question. *Williams v. Heard,* 140 U. S. 529. And if all the facts stated in the record before us do not, as matter of law, warrant the conclusion at which the highest court of the State arrived upon this question, it is the duty of this court so to declare, and to render judgment accordingly.

We must take the record as we find it, and are constrained to the conclusion that the assignee should not have been held to have exercised the right of choice between prosecuting the claim and abandoning it, in the absence of any evidence whatever to justify the conclusion that he had knowledge, or sufficient means of knowledge, of its existence prior to August 10, 1888; and that therefore there was error in the judgment.

*Judgment reversed, and the cause remanded, that the judgment of the Court of Common Pleas may be reversed, and further proceedings had not inconsistent with this opinion.*