GRAham, Judge,
delivered the opinion of the court.
This is one of a number of cases growing out of losses sustained by reason of the work of improvement by the Government in the navigation of the Savannah Eiver over a period of years from 1886 to 1904. The other cases are United States v. Lynah, 188 U. S. 445; United States v. Williams, 188 U. S. 485; and United States v. Heyward, 250 U. S. 633; 46 C. Cls. 484; 52 id. 87. The lands in these cases adjoined each the other.
The land claimed to be destroyed in this case is a few miles removed farther down the river from the lands which were involved in the cases just named. It is located on the same branch of the river, on the same side, and as to the portion of it affected by said improvements of navigation is similarly situated as to the tidal rise and fall of the water of the river, and is of similar productivity agriculturally, and with the lands in the above cases was used in the cultivation of rice by artificial processes. The facts are fully set out in the findings.
The questions of law involved and the general facts are substantially the same as in those cases except as to the amount of land affected and the question involved in the bankruptcy proceedings of the original plaintiff, William G. Morrell, which will be discussed later on. The facts show that the loss for which compensation is sought here was the outgrowth and concomitant of the improvement of the navigation of a navigable river; that the land claimed to have been destroyed was not used in the work of the improvement of navigation or directly taken for that purpose; that this land in its natural state prior to its use in the cultivation of rice by artificial processes and the construction of said improvements in navigation was submerged at high tide and not suitable in this natural state for the cultivation of rice; that the conditions which made it suitable for such cultivation were artificial, created by artificial dikes, embankments, and canals, which altered the natural state so as to make it adapted to the cultivation of rice; that the injury and loss here complained of was due solely to an interference with this artificial condition by a change in the natural tidal levels of the water in said river; that during the period when it is claimed this injury was done and loss suffered the land in *393 this artificial condition was repeatedly submerged by floods in the Savannah River due to waters seeping through said embankments and breaking over them, as well as by the increased volume of surface water drained upon them from the highlands during these periods; that it does not appear how much of the injury complained of is due to these floods and this surface drainage and how much to the improvement of navigation, there being no proof which would make it possible to segregate the amount of injury done by each. However, as all of these questions arose and have been passed upon in the cases above quoted, they are outside of the field of proper discussion.
The question has been raised in this case of the right of the plaintiff to recover a judgment in this suit upon the ground that the claim was part of the assets of the bankrupt, and scheduled as such, and therefore is the property of the bankrupt’s estate and not of the plaintiff.
This suit was brought in December, 1904. Most of the testimony for the plaintiff was taken in the spring of 1905 by attorneys employed by the original plaintiff, William G. Morrell. On June 3, 1910, said William G. Morrell on his own petition was'adjudged a bankrupt. A trustee was thereafter appointed to administer the bankrupt’s estate, and on August 2, 1910, the said Morrell was discharged from bankruptcy. This claim was scheduled by him as one of the assets of his estate with the following description:
“ United States Government for damages to Recess plantation through building of dams. Claim filed for $40,000. Value, unknown.”
The trustee did nothing in regard to this claim and made no disposition of it. He had notice of the fact that it was being sued upon, and took no steps to protect the claim or enforce it. The record does not show that he was ever made, or attempted to have himself made, a party to the suit.
He employed no attorneys and made no effort to enforce the claim. During the period of his trusteeship the suit was looked after by the attorneys formerly employed by the bankrupt; and since July 3, 1914, when the trustee was discharged, these attorneys, representing first the original *394 plaintiff, then his administrator, and afterwards the present plaintiff, his son and sole distributee, have prosecuted the suit, taken the necessary steps to bring it to a hearing, and presented and argued it in court. Since his discharge the trustee has done nothing to assert any interest in the claim or to protect or prosecute it. Under these circumstances it is a fair conclusion that he did not accept it as property of the bankrupt. Apparently he regarded it as of an onerous and unprofitable nature and as a burden rather than as a benefit to the estate and elected not to accept it. This he had a right to do. Sparhawk v. Yerkes, 142 U. S. 1; Dushane v. Beall, 161 U. S. 513, 515. Under the above authorities it must be held that he abandoned the claim. The effect of this abandonment by the trustee relates back to the time of the original proceedings in bankruptcy and left the title to the property in the bankrupt. In the case of Sessions v. Romadka, 145 U. S. 29, 52, the court said:
“ In such case the abandonment relates back to the commencement of the proceedings in bankruptcy, and the title stands as if no assignment had been made. Such abandonment is not so much a transfer of an existing interest in the assignee as an election on his part to treat the assignment as having never included that claim.”
The above quoted cases of Lynah, Williams, and Heyward, upon the authority of which this case is decided, hold that there was a taking of the land destroyed. In this view of the matter, as the Government is paying for the full value of the land, it should be put in possession of it.
Judgment for plaintiff in the sum of $14,792.50, the payment of said judgment to be suspended until the plaintiff shall file herein a proper and competent survey showing the metes and bounds of the said 591.7 acres of land abandoned in 1904, and shall give to the United States a good and sufficient deed for said land, said deed to be approved by the Attorney General.
Hat, Judge; DowNey, Judge; Booth, Judge, and Campbell, Chief Justice, concur.