### SEAMAN et al. v. McCULLOCH et al.

(Circuit Court of Appeals, Eighth Circuit. September 28, 1925. Rehearing Denied January 8, 1926.)

No. 6795.

**1. Street railroads ☞58—Trustee in street railway mortgage held not necessary party to bondholder's suit for receiver.**

Where company, which purchased several street railway lines and united them in a single system, executed a mortgage on its property as security for bonds previously issued by one of the subsidiary companies, payment of which it had guaranteed, *held*, suit by holder of such bonds for appointment of receiver to conserve mortgaged property, for protection of himself and other bondholders, was not a proceeding under the mortgage, nor subject to its terms, such that trustee named in mortgage was a necessary or proper party.

**2. Receivers ☞179—Receiver of corporation necessary party to previously instituted stockholder's suit to recover wasted assets from directors.**

General receiver for corporation, appointed in bondholder's suit to conserve property, *held* an indispensable party to a suit previously instituted by stockholder to recover for corporation assets alleged to have been wasted by its directors.

**3. Corporations ☞559(6)—Receivers ☞179—Whether receiver should be required to become party to previously instituted stockholder's suit held within court's discretion, and stockholder's suit properly dismissed after receiver's appointment.**

Whether general receiver for corporation, appointed in bondholder's suit for conservation of assets, should be required to become party to previously instituted stockholder's suit to recover assets alleged to have been wasted by directors, *held* matter within discretion of court, and stockholder's suit properly dismissed

after appointment of receiver, so that whole subject might be dealt with in case where receiver was appointed.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by John W. Seaman, revived in the name of David S. Seaman and Henry L. Seaman, his coexecutors, against Richard McCulloch and others. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

Ephrim Caplan, of St. Louis, Mo. (Randolph Laughlin, Henry Blodgett, A. M. Frumberg, A. R. Russell, and Walter N. Fisher, all of St. Louis, Mo., on the brief), for appellants.

Theodore Rassieur, of St. Louis, Mo. (John M. Goodwin, of St. Louis, Mo., on the briefs), for appellee Beggs.

Boyle & Priest, of St. Louis, Mo. (H. S. Priest, of St. Louis, Mo., of counsel), for appellees McCulloch and others.

Before SANBORN and KENYON, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. This is an appeal from a decree dismissing a stockholder's bill, following the appointment of a general receiver for the corporation at the suit of a bondholder. Seaman, a holder of preferred stock in United Railways Company of St. Louis, filed his bill against that company, certain individuals, directors of the company, and the representatives of certain deceased directors, and two other corporations under contracts, past and present, for the furnishing of power to United Railways Company. It is unnecessary for the consideration of the questions presented on this record to set forth in detail all of the allegations of plaintiff's bill, which is both voluminous and involved, and we content ourselves with stating the material ultimate allegations and the contentions and purposes of the bill. Before directing attention to these particular features of the bill, it may be enlightening to state without undue detail somewhat of the history of the concern which is the subject of this and has been the subject of much other legal controversy.

About the beginning of 1899, the United Railways Company of St. Louis, a Missouri corporation, hereinafter referred to as "Railways," acquired numerous independent street railway lines operating in the city of St. Louis, and consolidated them into a single system. "Railways" at the time had in contemplation also acquiring the remaining lines, two in number, which it did some years later. All of the acquired lines, as well as those in contemplation of acquirement, carried bonded indebtedness. On the 20th day of September, 1899, following the acquisition and consolidation of these independent lines, "Railways" executed its deed of trust securing an authorized issue of $45,000,000 4 per cent. bonds. This deed of trust was by its provisions to be a first lien on all property owned or thereafter acquired by "Railways," subject only to the pre-existing bonds outstanding against the several constituent lines, in the record and hereinafter, referred to as "divisional" bonds, which were secured by deeds of trust executed by the various constituent lines. The deed of trust recites the desire of "Railways" to make provision for purchasing, retiring, or exchanging the outstanding bonds of the several constituent lines acquired, and enumerates and describes the several outstanding issues of "divisional" bonds. A large proportion of the "divisional" bonds were taken up and retired through the issue of the 4 per cent. first mortgage bonds of September 20, 1899; others were acquired and held by "Railways" pending further events, and certain others of the "divisional" bonds are still outstanding.

Following the consolidation of these independent lines and the execution of the trust deed, the consolidated lines were leased to St. Louis Transit Company, which operated the lines for a number of years. In 1904 "Railways" canceled this lease and undertook the operation of the system, which continued until the appointment of the receiver April 12, 1919. In connection with this transaction St. Louis Transit Company issued $10,000,000 in bonds, which were guaranteed by "Railways," and secured by a deed of trust executed by "Railways" on all of its property owned or to be acquired, subject to the several deeds of trust securing existing "divisional" bonds, and subject to the deed of trust securing the $45,000,000 issue of 4 per cent. bonds, hereinafter referred to as "Railways 4's."

It is alleged that defendant Union Electric Light & Power Company, a Missouri corporation, about the beginning of 1917 merged and consolidated with defendant Electric Company of Missouri, a Missouri corporation, retaining the name Union Electric Light & Power Company, hereinafter referred to as "Union Company," and that Union Company, in connection with said merger, through various and successive transfers succeeded to the power contracts hereinafter mentioned and in plaintiff's bill complained of; said contracts having been pre-

viously made to and assigned by other power corporations not parties to the bill.

Plaintiff filed his bill January 7, 1918, and this bill was amended and supplemented by later filings. Plaintiff brings his suit as the holder of preferred cumulative stock, in behalf of himself and all other stockholders similarly situated, for enforcement and restitution of corporate rights claimed to have been violated, and with respect to which the corporation is helplessly inactive because of the dual capacity of and broken faith by its directors. The bill as amended and supplemented alleges in substance the continued domination and control of the corporation and its board of directors since 1908, by the defendant directors and certain corporate interests with which they were allied and interlocked, engaged in producing, distributing, and selling electric power; that a contract for the furnishing of power to "Railways" was made by it in 1908, and followed by two later contracts for the same purpose, and that all of said contracts were promoted and consummated through the influence and connivance of defendant directors, and were fraudulently made for the benefit of the dominating influences and to the detriment of "Railways," in that they obligated "Railways" to pay excessive prices for power and to purchase power from the corporations with which the defendant directors were allied, when it could more economically have produced such power by its own facilities. The bill also alleges that the directors in the conduct of "Railways" have so conducted as to arouse public enmity, that they have persisted unnecessarily in litigation, that they have extravagantly, unnecessarily, and unlawfully expended and dissipated corporate assets, and that through the making and operating under the alleged fraudulent contracts, and the unreasonable extravagances and irregularities of its directors, "Railways" has become insolvent, unable to pay interest upon bonded indebtedness, dividends upon stock, and operating expenses; that, but for the unlawful and fraudulent acts of defendant directors, "Railways" would be solvent and able to procure extension of its franchises from the public and successfully finance its business and pay interest and dividends; that defendant directors have profited unlawfully in large sums, which, if they were compelled to account for, would restore the solvency of "Railways" and enable it to continue as a successful going concern; that, if "Railways" continues under the control of defendant directors, defaults will be made in its interest payments, creditors will be unpaid, and that foreclosures of the trust deeds securing its bonded indebtedness will result.

Plaintiff prays for injunction restraining defendants' officers, directors, or agents from disposing of, removing, or interfering with corporate property, records, and funds; for the ouster of defendant directors and officers from all control over "Railways" and its affairs and property, except as respects defendant McCulloch in a limited degree stated; for accounting by defendant directors and the defendant representatives and trustees of deceased directors of their stewardship since election in 1908, with particular reference to personal profits or advantages to themselves, and losses and injuries to "Railways" permitted or caused by them, with decree for payment of such profits and losses; appointment of a special master to investigate, and report to stockholders the facts of said accounting, and to cause to be held a stockholders' meeting, at which said power contracts would be submitted for ratification or rejection, and at which all shareholders found to have unlawfully participated in profits from such contracts be enjoined from voting, and that the decision at such meeting be given full force and effect as to "Railways," its officers, directors, and shareholders; that following such meeting a receiver be appointed for the purpose of obtaining from the Electric Company of Missouri, the Union Company, and other parties, an accounting and satisfaction with respect to moneys and gains improperly derived from "Railways," and to institute proceedings to carry into effect the decision of said stockholders' meeting; appointment of a receiver at any time it should appear necessary in order to preserve the equities of the shareholders, assets of "Railways" to prevent dismemberment, and to preserve intact the property of "Railways" from threatening creditors, such receiver to carry out the orders prayed for; and for general relief.

After various attacks upon the bill, issue was finally joined and such proceedings had that a special master was appointed to take testimony and report the facts to the court. Later a motion was filed by plaintiff for the appointment of a receiver. Before the special master had reported, or action had been taken upon plaintiff's motion for a receiver, Samuel W. Adler, the holder of certain of the $10,000,000 issue of bonds by St. Louis Transit Company, guaranteed by "Railways," and secured by trust deed on all of its property, subject to "Railways 4's" and

the "divisional" bonds, filed a bill against St. Louis Transit Company and "Railways," in which he alleged default in payment by "Railways" of certain of the "divisional" bonds secured by trust deed upon part of "Railways" system, insolvency of defendants, threatened foreclosure or improper increasing of indebtedness prior to plaintiff's lien, default under another prior mortgage and danger of foreclosure, danger of dismemberment of "Railways" consolidated system, and the imminence of great loss in value of "Railways" property and diminution of the security behind his bonds, and injury to the public. Adler prayed for a receiver and marshaling of assets and declaration of rights of the respective lienholders and creditors of "Railways."

Immediately upon the filing of the Adler bill, the defendants appeared, answered, admitting the allegations of the bill, and consented to the appointment of a receiver, and on the 12th of April, 1919, the day following the filing of the bill, the District Court by order appointed Rolla Wells, of St. Louis, receiver "of all and singular railroads, lands, property, assets, rights, and franchises of the United Railways Company, * * * including all railroads and other property and assets, real, personal, and mixed, of whatever kind or description and wherever situated, owned, leased, or operated by said Railways Company, and all contracts * * * and all other assets of every kind and description, and said receiver is hereby granted six months (unless the time is further extended) to determine whether he will adopt or rescind all contracts of every nature which Railways Company may have entered into."

By the terms of said order said receiver was directed to immediately take possession of all the property and assets of "Railways," and to use, manage, and conduct said business in such manner as in his judgment would produce the best results, and to discharge all public duties obligatory upon "Railways," and to preserve said railroads and property in proper condition. Said receiver was authorized and empowered to institute and prosecute within said judicial district or elsewhere, and in his name as receiver, or in the name of "Railways," all such suits as might be necessary for the proper protection of said property and the discharge of his trust, and likewise to settle and discharge all claims, suits, or actions made or instituted against him as receiver, and also to appear in and conduct the prosecution or defense of or compromise or settle any pro-

ceeding now pending or hereinafter brought in any court or before any department, commission, or other tribunal in which "Railways" is or shall be a party which in the judgment of the receiver affected or might affect the property of "Railways." The order of appointment further proceeds with detail not necessary to be considered here.

The last paragraph of the order recites: "The court reserves the determination of the consolidation of this and the original suit of John W. Seaman v. McCulloch et al., No. 4820 in equity, together with interventions therein pending in this court, and hereinafter to make appropriate order or orders in reference thereto." It may be here stated, by the way, that later the District Court made an order consolidating the Adler and the Seaman suits, the Adler suit to be considered as an intervention in the Seaman suit, and extending the receivership to the Seaman suit. This order was resisted by Adler, who appealed from the order, and said order was by this court reversed in the case of Adler v. Seaman, reported in 266 F. 828.

Following the reversal of the District Court in Adler v. Seaman, supra, and after the mandate had come down, and before any report of the special master, defendants in this case moved for a dismissal of the plaintiff's bill, stating the following reason: "The record shows that a receiver for the United Railways Company was appointed in the cause of Samuel W. Adler v. St. Louis Transit Company and United Railways Company of all the assets and rights of action whatsoever of said company, and the same are now vested in the said receiver. Whatever right of action or claim may have existed in the corporation against the individual defendants, whether present or former directors of the corporation, is now vested in said receiver, and he alone can prosecute a suit therefor."

On March 31, 1923, plaintiff, John W. Seaman, having died, the case was by order revived in the name of David S. Seaman and Henry L. Seaman, executors of original plaintiff, who are the present appellants. On October 5, 1923, the court ordered as follows: "This cause having heretofore been submitted to the court on the motion of defendant to dismiss complainants' bill, * * * the court, having heard argument of counsel and being fully advised in the premises, * * * doth hereby sustain the motion of defendants to dismiss this suit." From the foregoing order, sustaining defendants' motion to dismiss, this appeal is taken.

While counsel for appellants in the brief and in oral argument discuss a number of subsidiary questions, all contentions center upon one or another of three propositions: (1) The District Court was without jurisdiction in the Adler Case, because Mercantile Trust Company, trustee in the trust deed securing the Transit Company's $10,000,000 issue of bonds, was an indispensable party, and was not made a party. (2) That, conceding the court's jurisdiction in the Adler Case, the receiver appointed was not an indispensable party to the Seaman Case, and, not being such, the Seaman Case should have been permitted to proceed. (3) Conceding jurisdiction in the court in the Adler Case, and the indispensability of the receiver as a party thereto, the District Court erred in dismissing the bill, but should have directed the receiver to become a party thereto and said cause to proceed.

[1] We take up these propositions in the order stated. This court considered the questions of the jurisdiction of the District Court in the Adler Case in In re Veach, 4 F.(2d) 334. In that case the court said:

"The facts on which petitioner bases his claim that the Mercantile Trust Company was a necessary and indispensable party in the Adler suit do not support that claim. It is insisted by petitioner that, because Adler brought his suit as owner of 135 bonds secured by the guaranty mortgage, he was bound by the requirements of sections 4 and 13 of article III of that mortgage, above quoted, and that under the restrictions of those sections the Mercantile Trust Company was an indispensable party to his suit. But the right which Adler asserted and sought to protect in his suit was not conferred on the trustee in the guaranty mortgage, and did not fall within its restrictions. He did not seek in that suit an enforcement of any of the provisions of that mortgage; he did not allege a breach of condition of that mortgage, nor that the property covered by it be applied to the satisfaction of the obligation of his guarantor. The gravamen of Adler's complaint was this: As holder of the St. Louis Transit Company bonds secured by the guaranty mortgage he was interested in having the property of his guarantor conserved and not sacrificed, for his guarantor, United Railways Company, as he alleged, was then insolvent, having many creditors, both secured and unsecured, among them holders of about $30,000,000 in bonds outstanding under the $45,000,000 mortgage, which was prior in lien to the guaranty mortgage. His guarantor owned the entire street railway system in St. Louis. The lines of the Union Depot Railroad Company, worth about $8,000,000, had been taken over and were a part of that system. The depot company had mortgaged its properties, prior in date to the guaranty mortgage of the Railways Company which secured Adler. The $45,000,000 mortgage contained a covenant that the Railways Company would either pay off or secure an extension of the bonds issued by the Union Depot Company, when they came due, and it had failed to do so. It had pledged with the War Finance Corporation $3,487,000, face value, of the Union Depot Company bonds to secure a large indebtedness which it owed to the War Finance Corporation, and when Adler sued it was proposing to redeem that pledge by substituting with the pledgee a like amount of bonds then unissued under the $45,000,000 mortgage.

"Adler alleged in his complaint that the financial condition of the United Railways Company was such that it was unable to pay its indebtedness to the War Finance Corporation; that there was danger of foreclosure of the mortgage of the Union Depot Company, causing a sacrifice of the property covered by that mortgage, which had a value of about $8,000,000, and also causing a dismemberment of the street railway system; that if the United Railways Company succeeded in preventing a foreclosure of the Union Depot Company mortgage, by substituting $3,487,000 of unissued bonds of the $45,000,000 mortgage in lieu of the Union Depot Company bonds, the issuance of those additional bonds under the $45,000,000 mortgage would likely bring about a foreclosure of the latter mortgage. It was this threatened dismemberment of the system, on the one hand, and the loss to Adler, on the other hand, of all security, that gave him a right to invoke the aid of the court in preserving the property for the benefit of all creditors, so as to prevent its sacrifice, and the assertion of this right was not given to the Mercantile Trust Company, as trustee, nor was Adler in any wise restricted by sections 4 and 13 of article III of the guaranty mortgage in asserting such a right on his own motion. Those sections found in the guaranty mortgage relate to procedure to be taken under it on breach of its conditions. Adler sought to preserve the property for the benefit of the holders of bonds under the guaranty mortgage, as well as other creditors. He was not attempting to enforce payment of the indebtedness to him and the other holders of bonds under that

mortgage by proceeding under its terms for that purpose, and the right which he asserted was not a right given to the Mercantile Trust Company, as trustee, nor a right in which Adler was restricted in assertion on his own motion; and so we think that the Mercantile Trust Company would have been an improper party in the Adler suit.

"Issuance of the rule prayed for is denied, and the petition dismissed."

The Veach Case (C. C. A.) 4 F.(2d) 334, had not been decided when appeal in the instant case was taken. It is true In re Veach, supra, was a petition by Veach for a rule requiring the clerk of the District Court for the Eastern Division of Missouri to show cause why he should not file petitioner's petition intervening in the Adler Case pending in that court, and that such intervention was proposed for the express purpose of attacking the jurisdiction of the court in the Adler Case upon the ground that Mercantile Trust Company, was an indispensable party and had been omitted as a party, and this court held that because of equity rule 37, requiring that "intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding," Veach should not be permitted to file his petition. Now, lest it be thought that this court, in In re Veach, proceeded to consider the merits of Veach's petition while denying him the right to file the same, we here express our approval of the reasoning and conclusion of the court in that case as applied to the instant case.

Counsel for appellants stress the fact that plaintiff in the Adler Case in the prayer of his bill asked the court to "enforce and ascertain the rights, liens, and equities of said creditors as the same may be finally ascertained and decreed in and to each and every portion of the property and assets" of "Railways." But the word "enforce," as used in this connection, must be taken in the light of the purpose of the Adler suit as disclosed by the whole bill. Adler had alleged action imminent by "Railways" in connection with the War Finance Corporation loan therein referred to, which was calculated to displace in a degree his security, and in that respect in a degree to deprive his lien of force and effect. We think the use of the word "enforce" in that connection meant merely to keep in force or maintain the status quo of such liens, rather than foreclosing the same. The fact that no breach of condition of the Transit Company's trust deed was alleged would seem to require such interpretation. In our opinion the Adler bill disclosed federal jurisdiction.

[2] Considering appellants' second proposition: Was the receiver appointed in the Adler Case a necessary party to the Seaman Case? That question was considered in Adler v. Seaman, supra, but counsel for appellants urge that what was said in that case was obiter, and that the question should be reconsidered here, relieved from any controlling effect of the opinion in Adler v. Seaman.

What was the language of the court in Adler v. Seaman, referred to as obiter? While counsel are not very definite in the brief, we assume that reference is made in this respect to division 3 of the opinion in that case. Judge Stone, who delivered the opinion of the court, pointed out that the appointment of a receiver in the Adler Case had materially affected the status of the Seaman Case. He said: "The Seaman bill had sought three main and one contingent results, which were recovery of assets wrongfully wasted by certain of the defendant officers and directors; submission of the power contracts and replacement of existing directors and officers; and, if dismemberment threatened during the litigation, a receiver to preserve the property in its integrity." Now, what was Judge Stone considering at this point in the opinion? Manifestly the question of propriety of consolidation. The opinion follows by pointing out that the appointment of a receiver in the Adler Case anticipated the necessity of a receiver in the Seaman Case, as well as the removal of existing directors and officers. That the same statement applied to the executory portion of the power contracts, "since the receiver may adopt them or not as seems best for the estate (Dushane v. Beall, 161 U. S. 513, 515, 16 S. Ct. 637, 40 L. Ed. 791; U. S. Trust Co. v. Ry. Co., 150 U. S. 287, 14 S. Ct. 86, 37 L. Ed. 1085) during the receivership, and in fact is given, in the order appointing him, a specified time within which to adopt or reject all contracts. How did the Adler receivership affect the remaining object of the Seaman bill, to wit, the recovery of wasted assets of the company?" Thus it appears that, with the appointment of a receiver in the Adler Case, there remained nothing of the Seaman bill but the matter of accounting and recovery of assets. But the matter of complete accounting and recovery of assets from the alleged delinquent directors was inextricably involved with the power contracts, and for

that reason, if no other, the receiver whose functioning might be vitally affected by the disposition of these contracts was a necessary party. Now, upon the question of consolidation there under consideration, was it not material whether an indispensable party was absent from the record? Would it be reasonable to consolidate, for the purpose of trial, cases, when the bill in one case was fatally defective for the want of an indispensable party? We think that the discussion of this subject in Adler v. Seaman (C. C. A.) 266 F. 828, was not obiter, but clearly germane to the decision in that case, and that the conclusion reached that the receiver was a necessary party was sound.

[3] Having arrived at the conclusion that the court had jurisdiction in the Adler Case, and that the receiver appointed in that case was an indispensable party to the Seaman Case, we now come to consider whether notwithstanding this the court erred in dismissing plaintiff's bill, but should have directed the receiver to become a party thereto and that said cause proceed. This we think was a matter entirely within the discretion of the court having jurisdiction of the receivership. While the appointment of the receiver in the Adler Case did not ipso facto, et eo instanti, abate the Seaman Case, the very power to appoint the receiver and take over the entire assets and affairs of the corporation involved the power of the court to abate that case and deal with the whole subject in the case in which the receiver was appointed. Practically all that was left of the Seaman Case, as stated by Judge Stone in Adler v. Seaman, was the matter of accounting, and that was inextricably involved with the power contracts. It was, therefore, highly important that this delicate situation should be dealt with exclusively from the standpoint of the receiver unhampered by the restrictions necessarily imposed by the existence of the Seaman suit. As stated by Judge Stone in Adler v. Seaman: "The receiver may adopt them or not as seems best for the estate * * * during the receivership, and in fact is given, in the order appointing him, a specified time within which to adopt or reject all contracts." But how could the receiver adopt and at the same time prosecute the Seaman suit? The further prosecution of the Seaman suit by the receiver would ·in itself be a repudiation of the contracts.

We think there was no error in the order and judgment of the District Court sustaining the motion to dismiss the plaintiffs' bill, and that the same should be and is affirmed.