WARWICK *et al. v.* MERIDIAN HOTEL CO.

(Division A.  Nov. 30, 1936.  Suggestion of Error Overruled, Jan. 11, 1937.)

[170 So. 820.  No. 32330.]

612

Shannon & Schauber, of Laurel, for appellant, R. E. Warwick.

614

**Shannon & Schauber,** of Laurel, for appellee, on cross-appeal, First National Bank.

**Alexander & Satterfield,** of Jackson, for appellant, R. E. Warwick.

Welch & Cooper, of Laurel, for appellant, Capital National Company.

620

J. H. Currie, Walker Broach, Jr., and J. C. Floyd, all of Meridian, for appellee, Meridian Hotel Company.

622

624

Argued orally by **A. B. Schauber**, for appellant.

**McGowen, J.,** delivered the opinion of the court.

The Meridian Hotel Company, a corporation, and appellee herein, filed its bill against R. E. Warwick and wife, Mrs. R. E. Warwick, and others, in the chancery court of the second district of Jones county on the 10th day of May, 1934.

The bill alleged that the complainant, the Meridian Hotel Company, a corporation, recovered a judgment at law for damages in the sum of three thousand dollars, and that the complainant was entitled to a decree against the defendants R. E. Warwick and his wife for that sum, together with interest and costs. The bill further alleged that R. E. Warwick and his wife were the owners of all the stock of the Fire Protection Company, a corporation, and that contrary to the by-laws and the law, Warwick, while the corporation was a going concern, had taken therefrom as his salary ten thousand four hundred dollars, and that Warwick and Mrs. R. E. Warwick had unlawfully diverted the funds belonging to the Fire Protection Company to their own personal benefit, and in the payment of their private debts owing to the other defendants herein who were charged with notice that such money belonged to the said Fire Protection Company; and alleged thereby that a trust in its favor should be set up in equity, and its claims should be made superior to certain securities and liens held on the property of Warwick and his wife by the various defendants herein; and prayed for a decree allowing complainant to recover as against Warwick and Mrs. R. E. Warwick, and the other defendants, that its lien be prior in right to those held by the other defendants.

There was no effort to make the bill a general creditors' bill. No other creditors were invited to come in, nor was the bill filed in behalf of any other creditors in a like situation.

A demurrer to the bill was filed by Warwick and his

wife, which was overruled. Answers were filed by the other defendants, in brief, denying liability or notice of the appropriation of the funds of the Fire Protection Company by Warwick and his wife.

Upon a final hearing the court granted the appellee, Meridian Hotel Company, the relief as prayed for to enforce its claim to a trust on the property pledged by the appellants Warwick and wife to at least two other creditors.

We are persuaded that it is our duty to reverse the decree of the chancellor, for the reason that we are of the opinion that the demurrer interposed by Warwick and his wife to the bill should have been sustained.

For some reason the following allegations are contained in the bill: "That thereafter, on or about the 4th day of June, 1932, the said Fire Protection Company filed a petition in the United States District Court in and for the Eastern Division of the Southern District of the State of Mississippi to be adjudicated a bankrupt, and was thereafter duly adjudicated a bankrupt, as per Exhibit 'A' hereto, and said estate duly and properly administered, and all assets thereof liquidated, and closed on or about the ———— day of April, 1933, without any payment of dividends to creditors." It was further alleged that testimony was given in connection with the bankrupt corporation by Warwick, as manager, that the said corporation, at the time of its closing, was without assets or property of any kind, and that no further business had been transacted since the petition for bankruptcy had been filed. The exhibit discloses that the Fire Protection Company was adjudicated a bankrupt on June 4, 1932.

The demurrer challenged the bill on two grounds:

"1. The cause of action, if any there is, subsists in the trustee in bankruptcy.

"2. Because complainant does not allege that the

trustee in bankruptcy has refused to bring a suit against these defendants.''

The allegation that the bankruptcy estate had been duly and properly administered, together with the fact that there had been an examination of the bankrupt corporation and the statement that there were creditors, is sufficient to indicate that there had been such a proceeding, and that all the things necessary had been performed by the bankruptcy court.

In the case of Allen & Co. v. Montgomery et ux., 48 Miss. 101, this court held: ''Property conveyed by a bankrupt in fraud of his creditors, becomes vested by operation of law in his assignee for the benefit of his creditors, and he alone has the right to reach and subject it to the payment of debts;'' and that ''creditors cannot, in a state court, pending the administration of an insolvent's estate in a bankrupt court, appropriate property fraudulently conveyed by the bankrupt, exclusively to their debts.'' The proceeding in the case supra is very similar to the instant one save for the one fact that the assignee in bankruptcy was discharged, as was the bankrupt, during the pendency of the suit in the state court to recover on behalf of a single creditor. In the opinion in that case, this court said: ''But we think the bankruptcy of the debtor, F. A. Montgomery, presented an insurmountable obstacle in the complainants' path.'' The court further said: ''The effect of bankruptcy, on suits pending in the state courts, is to stay or suspend them. They may, with the leave of the bankrupt court, be prosecuted to judgments for the single purpose, however, of determining the amount due. Final process to procure satisfaction cannot be issued and executed. To permit it, would involve the collection and conversion of the assets into money by the assignee and their distribution in inextricable confusion. If the suit of the creditor proceed to judgment on the suggestion of bankruptcy, the debtor must retire and the assignee be

brought in as defendant in his place." And it states further: "Nor are we inclined to remand the cause as asked by counsel for appellees, if we should be of opinion that the assignee is a necessary party, in order that he might be made such in the chancery court. The district court of the United States sitting in bankruptcy has full and complete jurisdiction to administer the estate of the bankrupt. If the property pursued by the complainants in this suit may be subjected for the creditors, that court, which draws to it all the funds and has before it all the creditors, can mete out full redress, whatever doubt there may be as to the jurisdiction of the state court, at the suit of the assignee alone or with the creditors, to set aside a fraudulent disposition of property by the bankrupt debtor. . . . There is no doubt of the cognizance of the federal tribunal over the subject."

By the Bankruptcy Act (section 70 [11 U. S. C. A., sec. 110]), the title to property upon an adjudication of bankruptcy becomes vested in the trustee named in that court, and the fact that an estate may have been closed does not relieve it of his jurisdiction. Such estate may be reopened whenever it appears that it was closed before being administered; and when the jurisdictional facts are shown, it is the duty of that court so to do; and the court, if the original proceeding has been discharged, may open another. Collier on Bankruptcy (13 Ed.), sec. 2, pp. 102-104.

The trust and the misappropriation here made the basis of this suit were in existence long before the adjudication in bankruptcy. There is no contention that this right of action did not pass to the trustee. The remedy available to the creditor is exclusive. Collier on Bankruptcy, p. 1318. The same authority is to the effect that after the appointment and qualification of a trustee, suits may not be instituted by creditors to recover or protect assets for the estate in their own name

or of their own right, except when the bankruptcy court shall have authorized the suit.

There is no allegation in the bill here under consideration that a right to bring this suit was granted to the creditor by the federal court. In the case of Glenny v. Langdon, 98 U. S. 20, 25 L. Ed. 43, that court held: "It is only through the instrumentality of his assignees that creditors can recover, and subject to the payment of their claims, the property which the bankrupt fraudulently transferred prior to the adjudication in bankruptcy, or which he conceals from, and fails to surrender to, his assignees," and that for good cause shown, assignees of the bankrupt would be compelled by that court to take the requisite steps for the full and complete protection of his creditors.

The Glenny Case, supra, was approved in the case of Trimble v. Woodhead, 102 U. S. 647, 26 L. Ed. 290, wherein the facts of the case do not essentially differ from the facts of the case at bar. In that case, the bankrupt had long been discharged, two years having elapsed without the assignee in bankruptcy bringing suit. The court, as to that situation, said, "We do not see on what principle the failure of the assignee to sue within two years transfers his right of action to the complainant;" and further made this interesting statement: "Nor is the creditor of a bankrupt without remedy in such a case as the present. If he is aware of the existence of property or credits which should rightfully go to the assignee for the benefit of the creditors, he should inform the assignee of all he knows on the subject, and request him to proceed, by suit if necessary, to recover it. If he declines, a petition to the court of original jurisdiction would, if a proper case was made, compel the assignee to proceed. . . . The primary object of the bankrupt law is to secure the equal distribution of the property of the bankrupt of every kind among his creditors. This can only be done through the

rights vested in the assignee and by the faithful discharge of his duties. Let us suppose, however, that a creditor is aware of the existence of property of the bankrupt sufficient to satisfy his own debt, which has not come to the possession or knowledge of the assignee. He has but to keep silence for two years, and then bring suit in his own name against the fraudulent holder of this property, and make his debt really at the expense of the other creditors; or he may have an understanding with the bankrupt, who, after two years, and after his own discharge from all his debts, may confess judgment to this creditor and furnish him the evidence to prove the fraud, and thus secure him a preference forbidden by the act itself.'' See, also, Moyer v. Dewey, 103 U. S. 301, 26 L. Ed. 394.

From all these authorities we deduce that the right of action here sought to be enforced, the trustee, and the creditor are all within the control of the bankruptcy court, and that jurisdiction is exclusive, unless and until surrendered by it.

The demurrer in this case raised the federal question: Had the trustee in bankruptcy waived his right to this claim? Williams v. Heard, 140 U. S. 529, 11 S. Ct. 885, 35 L. Ed. 550.

An assignee knowing the facts or being chargeable with knowledge of them, who by definite declaration, positive action, or unequivocal forbearance to act, indicates a choice not to accept certain property as a part of the estate, waives the claim to it. Dushane v. Beall, 161 U. S. 513, 16 S. Ct. 637, 40 L. Ed. 791.

Primarily and presumptively the federal court had jurisdiction hereof, and the right to enforce the claim in the courts unless such facts are alleged as would show the trustee had waived his prior paramount claim to it. In the case at bar the facts alleged show no waiver or knowledge of this claim by the trustee. The allegations of the bill in the case at bar, and the record, show that

this suit was brought within about thirteen months from the time the estate was settled.

The only answer appellee makes is that the trustee is not required to accept property which is onerous and unprofitable and which will burden rather than benefit the estate. In the cases which we have examined, many of which were suits to recover property fraudulently appropriated by the bankrupt, we have not found that any one of those similar cases was thought to be onerous. It is true that the trustee is not required to accept such property, but he must either file a disclaimer or abandon his right thereto. No such state of facts is alleged in this bill as would warrant the creditor to pursue his remedy in the state courts. There is no allegation that indicates to this court that the property is onerous or that the trustee thought it to be such, or that he knew of the existence of this right of action, or that the bankruptcy court, its referee, or the United States District Judge had been acquainted with the facts. There is no presumption here that this right of action would have been onerous or burdensome to the trustee. The trustee is not shown to have been afforded an opportunity to make any election whatsoever in this matter. The bankruptcy court is fully equipped with the machinery and power to control the collection of the assets of the bankrupt debtor and to see that such assets are administered fairly and equally among the bankrupt's creditors. Cases are cited in the authorities to which we have referred where demurrers have been sustained to bills brought by creditors similar to the one here under consideration.

There are many statements referring to the record of the trial, and adverted to by counsel on either side, which are not contained in the bill, and to which we cannot have recourse in considering the demurrer.

It is difficult to see how the bill in this case could be amended so as to obviate the defects in its allegations,

to which we have called attention. The burden was on the complainant in the court below, by his bill, to establish his right to bring the action, and we think .the parts of the bill which we have quoted demonstrate that he had no such right. However, we will remand the case in order that the question of amendment of the bill may be determined.

Reversed and remanded.