TORRUELLA, Circuit Judge.
Following discharge in bankruptcy,[1] defendant John A. Grant was charged with, and convicted of, one count of knowingly and fraudulently concealing from his bankruptcy estate at least six maritime prints by the artist John Stobart with an approximate value of $12,000 in violation of 18 U.S.C. § 152. At trial, Grant moved for judgment of acquittal at the close of the government’s evidence and again at the close -of all the evidence. Both motions were denied. After the jury verdict, Grant moved for judgment of acquittal notwithstanding the verdict or for a new trial. Again his motion was denied. Grant now appeals. We reviewed the evidence in the light most favorable to the government. Finding that the government failed to prove an essential element of its case, we reverse judgment and vacate Grant's conviction.
FACTS
Prior to discharge in bankruptcy, Grant operated a financial planning and investment business both under his own name and under the name of several companies known generally as the Summit Companies. At that time, various Stobart prints hung throughout Grant’s offices. In May 1987, Grant filed a voluntary chapter 11 bankruptcy petition as an individual and on behalf of the Summit Companies. Thereafter, Grant’s place of business changed *2 twice. The Stobart prints apparently did not fit the reduced space. As a result, Grant removed several of the prints [2] and stored them at his Winchester, Massachusetts residence.
On November 17, 1987, the Chapter 11 proceedings were converted to Chapter 7 liquidations.[3] The newly appointed trustee, Gary Cruickshank, scheduled a meeting with Grant and his attorney, Harry Murphy, at Grant’s offices on November 20, 1987. Two creditors’ attorneys, Linda Young and Richard Mikels, accompanied the trustee. Young, who had previously visited Grant’s offices when the Stobart prints were present, noticed that they were now missing. She brought that fact to the attention of the trustee.
The trustee told Grant that he had received information that items were missing from the offices and that he wanted to go immediately to Grant’s home to conduct an inventory of the property there. Grant, having previously scheduled a conflicting engagement,[4] postponed the inventory until later that afternoon. Grant did not, however, keep his other commitment. Instead, he went directly to Winchester where he proceeded to remove various articles from his residence. He loaded some items into his own van while placing the remainder into the cars of his two administrative assistants, Maureen Murphy and Dolores Donahue.[5] Among the articles placed in the administrative assistants’ cars were at least two Stobart prints.[6]
While this was taking place, the trustee received a telephone call from one of Grant’s neighbors, who was also a member of the bankruptcy creditors’ committee, notifying him that Grant was removing property from the Winchester home. The trustee reported the matter to the F.B.I. and then immediately drove with Young to Winchester. Upon arrival, the trustee, with Grant’s consent, conducted an inventory of the remaining property.
While the inventory was underway, two F.B.I. agents arrived. The agents informed Grant that they were investigating allegations that Grant had removed assets from his home in violation of the bankruptcy fraud statute. Grant admitted that he had removed some business items, including typewriters, business papers and two Stobart prints. He offered to prepare a list of the items removed. Although no such list was ever prepared, the items, including the prints, were reportedly returned to the house the next day. No further action was taken at that time.
On August 15, 1989, the trustee and Grant entered into a settlement agreement which was approved by the bankruptcy court on February 1, 1990. As part of the settlement, the trustee abandoned any claim to the Winchester residence,[7] or any property found therein, and released Grant from any claims he might have had concerning the events of November 20, 1987. Nevertheless, on February 13, 1990, grand jury proceedings commenced against Grant. Grant was charged with one count *3 of violating 18 U.S.C. § 152 by knowingly and fraudulently concealing from the trustee and creditors at least six Stobart prints with an approximate value of $12,000. Grant was convicted by jury verdict on August 22, 1990.
DISCUSSION
To establish Grant’s guilt under 18 U.S.C. § 152, the government needed to prove beyond a reasonable doubt the following four elements: (1) “that [Grant] had been adjudicated a bankrupt;” (2). that the assets in question belonged to Grant’s bankruptcy estate; (3) that Grant concealed the property from the bankruptcy trustee; and (4) that Grant did so “knowing of the appointment of the trustee and with intent to defraud [his] creditors.” See United States v. Guiliano, 644 F.2d 85, 87 (2d Cir.1981). For the following reasons, we find, as a matter of law, that the government failed to meet its burden of proof.
As a matter of undisputed bankruptcy law,[8] upon effective abandonment of bankruptcy assets, title to those assets reverts back to the original owner as though the bankruptcy estate had never owned them. See Brown v. O’Keefe, 300 U.S. 598, 602, 57 S.Ct. 543, 546, 81 L.Ed. 827 (1937) (abandonment removes title from the estate and reverts it to the individual as though “no assignment had been made”); Rosenblum v. Dingfelder, 111 F.2d 406, 409 (2d Cir.1940) (“when the trustee in bankruptcy abandons an asset, he is to be treated as having never had title to it; the abandonment is said to relate back, so that ‘the title stands as if no assignment had been made’ ”); In re Flamand, 78 B.R. 644, 645 (Bkrtcy.D.R.I.1987) (once an abandonment takes place, “title to that property is treated as if it were never held by the trustee since abandonment relates back to the filing of the petition”). For an abandonment to be effective, the trustee must have had knowledge of the specific property now sought to be treated as abandoned. See In re Tarpley, 4 B.R. 145, 146 (Bkrtcy.M.D.Tenn.1980) (citing Dushane v. Beall, 161 U.S. 513, 516, 16 S.Ct. 637, 639, 40 L.Ed. 791 (1896)). Such knowledge may be either actual or implied, and once established, makes the abandonment effective and irrevocable. See, Tarpley, 4 B.R. at 146-47 (where the trustee had sufficient facts “to put him upon diligent inquiry as to the transaction,” the abandonment “is not open to challenge and must be held irrevocable”).
It follows that, upon an effective abandonment, there can be no violation of 18 U.S.C. § 152 for acts taken with respect to the abandoned property. This applies even to activity occurring “in the interval between bankruptcy and abandonment.” See Flamand, 78 B.R. at 645 (quoting 4A Collier on Bankruptcy ¶ 70.42[4] (14th ed. 1978) (“[d]ue to ... relation back ... the bankrupt may dispose of the property in the interval between bankruptcy and abandonment”)).
In the instant case, before the trustee abandoned any claim to property located at defendant’s Winchester residence, evidence indicated that the Stobart prints were in the home. Most notably, the trustee’s own appraiser, Paul Dias, conducted an appraisal of the prints at the residence prior to abandonment.[9] Thus the trustee had imputed knowledge that the prints were present at defendant’s home at the time of abandonment. That being the case, there was an effective abandonment of the prints. See Tarpley, 4 B.R. at 146-47.
Since the abandonment was effective, and the prints were never property of the estate, it was therefore legally impossible for Grant to commit the crime charged, even assuming a criminal intent at the time of the removal of the prints. As a result, his conviction cannot stand. Accordingly, the jury verdict should be vacated. That *4 being the case, we need not address Grant’s other issues raised on appeal.
The verdict below is hereby vacated and the judgment reversed.

. In re John A. Grant, 109 B.R. 534.

. By this time, Grant was no longer in possession of the original number of office prints. Apparently Grant was not the only individual who owned Stobart prints. Several of his employees did as well. When those employees terminated their work relationship with Grant, they took their prints with them. In addition, several prints were acquired by an unrelated company in Chelsea, Massachusetts.

. This was accomplished by the district court without notice or hearing. Although the district court decision was effectively reversed on appeal, the cases were never formally reconverted back to chapter 11 proceedings. In any event, Grant was unable to recover and the bankruptcies proceeded to liquidation.

. Grant claimed to have an appointment with his attorney, Elliott Lobel, on an unrelated matter.

. Murphy and Donahue had previously arranged to meet Grant at his home that morning. That fact was not related to the trustee. Grant maintains that the confusion at his office caused him to forget about the meeting with his assistants.

. The evidence at trial indicated there may have been as many as nine such prints. The exact number, however, is irrelevant for purposes of this appeal. •

. Grant’s wife owned the home, which she mortgaged for $250,000, which she in turn gave to Grant to contribute to the settlement.

. Admitted to by government counsel in oral argument.

. Only two Stobart prints were found at that time. There being insufficient proof of any additional concealed prints, the district court determined that the only prints now in question were the two appraised by Paul Dias.